IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JAMES E. STEVENSON III,
SHARYN STEVENSON, HEATH ADKISSON,
LORI ADKISSON, RYAN BRASWELL,
MELISSA BRASWELL, OLIVER COPPEDGE,
TRACY COPPEDGE, GEORGE A. HALE III,
STEPHANIE HALE, JEFF LANGSTON
AND MISSY LANGSTON,                                        PLAINTIFFS


v.                          NO. 3:13-CV-127-KGB


BLYTHEVILLE SCHOOL DISTRICT NO. 5                    DEFENDANT


**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION AND REQUEST FOR EXPEDITED HEARING**

## I.      INTRODUCTION

Plaintiffs seek injunctive and declaratory relief under 42 U.S.C. §1983

against defendant Blytheville School District No. 5 ("Blytheville School District")

for its unlawful and unconstitutional refusal to permit inter-district school transfers

in the coming school year, contrary to the commands of Act 1227 of 2013, also

known as the Arkansas Public School Choice Act of 2013 (the "Act"). The Act is

attached to the Motion and incorporated herein as Exhibit A. Under Federal Rule

of Civil Procedure 65, plaintiffs seek an expedited hearing and a preliminary

injunction enjoining Blytheville School District from opting out of the school choice program under the Act for the coming school year.

## II.   STATEMENT OF FACTS

The Act was adopted on April 16, 2013 and became effective immediately by virtue of its emergency clause. The Act established a public school choice program to enable students to attend school in a non-resident district subject to certain limitations. Each public school district, including Blytheville School District, must participate in the public school choice program according to the terms of the Act.

In order to transfer from a resident to a non-resident school district under the Act, a student's parent must submit an application to the non-resident district with a copy to the resident district no later than June 1 of the year in which the student seeks to begin the fall semester at the non-resident district. Each plaintiff who is the parent of school-aged children has submitted an application for a transfer from Blytheville School District to a non-resident district for the school year beginning in the fall of 2013. A copy of each application is attached to the Motion and incorporated by reference herein as Exhibit B.

The Act contains two limitations that may apply to a resident district and may restrict or defeat a student's right to transfer to a non-resident district. The first, contained in ARK. CODE ANN. §6-18-1906(a), provides that if the provisions

2

of the Act conflict with a provision of an enforceable desegregation court order or a district's court-approved desegregation plan regarding the effects of past racial segregation in student assignment, the provisions of the order or plans shall govern. This limitation will be referred to as limitation (a) in this brief.  Limitation (a) applies to both resident and non-resident school districts without any affirmative action, vote or conduct by the school district. In essence, limitation (a) permits a specific remedial order to take precedence over the school choice program set forth in the Act in the event that the remedial program would conflict with the choice program. Blytheville School District is not subject to any enforceable desegregation court order or desegregation plan within the meaning of limitation (a) of the Act.

The second limitation under the Act is an "opt-out" provision set forth in ARK. CODE ANN. §6-18-1906(b). This limitation will be referred to as limitation (b) in this brief.  Limitation (b) permits a school district annually to declare an exemption under the school choice program of the Act if the school district is subject to the desegregation order or mandate of a federal court or agency remedying the effects of past racial segregation. Limitation (b) requires a school district to notify the Department of Education by April 1 if it intends to declare an exemption under limitation (b) in the next school year.  ARK. CODE ANN. §6-18-1906(b)(3).

On April 29, 2013, the Board of Education of Blytheville School District, a duly created and existing public school district established under the laws of Arkansas, adopted a resolution attempting to declare a limitation (b) exemption from the Act (the "Resolution"). A copy of the resolution is attached to the Motion and incorporated by reference herein as Exhibit C. In the Resolution, Blytheville School District directed its superintendent to provide notice to the Department of Education that the district sought an exemption under limitation (b) for the school year 2013-14. Blytheville School District provided notice to the Department of Education under limitation (b) after April 1, 2013, the deadline provided in the Act. *See* May 9, 2013 Letter from Richard Atwill, attached and incorporated by reference as Exhibit D to the Motion for Preliminary Injunction.

### III.   ARGUMENT

Because the Act became effective on April 16, 2013, the law prohibits any school district in the State of Arkansas from declaring an exemption under limitation (b) for the school year beginning in the fall of 2013. Blytheville School District's declaration of exemption under limitation (b) deprives plaintiffs and their children of their rights to public school choice for the coming year as established by the Arkansas General Assembly and the Governor in the Act. That right is protected by the Fourteenth Amendment, and the Resolution denies plaintiffs due process and equal protection of the law. The conduct of Blytheville School District

4

in adopting the Resolution cannot survive rational-basis scrutiny under federal standards. In addition, the Resolution violates the plaintiffs' fundamental constitutional right to a free and adequate public education under Arkansas law, of which the right of public school choice under the Act is a part. Finally, Blytheville School District's Resolution denies plaintiffs and their children their statutory right and privilege in the public school choice program in the school year beginning in August 2013 under the laws of Arkansas. The plaintiffs will be irreparably harmed unless this Court issues a preliminary injunction to enjoin Blytheville School District to rescind the Resolution quickly so that non-resident transferee districts can consider applications under the Act for the coming school year.

A.      **PRELIMINARY INJUNCTION STANDARD.**

In deciding whether to grant a motion for preliminary injunction, a district court considers: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of harm to the movant compared to the injury an injunction would cause other interested parties; and (4) the public interest. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003); *Dataphase Sys. Inc. v. CL Sys.,* 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Olin Water Services. v. Midland Research Laboratories, Inc.*, 596 F. Supp. 412, 413 (E.D. Ark. 1984). No single factor is determinative. *Dataphase*, 640 F.2d at 113. The focus is on "whether the balance of equities so favors the

5

movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*. "[W]here the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." *Id*. "[A] preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." *Id*.

The plaintiffs will be irreparably harmed unless this Court acts quickly to prevent Blytheville School District from violating their constitutional rights and the school choice laws of the State of Arkansas. If the Court fails to enjoin Blytheville School District, the harm to the plaintiffs and their children will far outweigh any potential harm to Blytheville School District that could result from granting an injunction. The plaintiffs are very likely to succeed on the merits of their claims under 42 U.S.C. §1983, the Fourteenth Amendment, and the Arkansas Civil Rights Act, ARK. CODE ANN. §16-123-105. It is in the public interest to prevent the violation of Fourteenth Amendment rights and the violation of the Arkansas Civil Rights Act. All of the *Dataphase* factors weigh heavily in favor of granting the plaintiffs' motion for a preliminary injunction.

1.     **PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.**

Irreparable harm occurs "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Group, Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *GMC v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). The party must show "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *GMC*, 563 F.3d at 319.

a.     **Plaintiffs' interests in public school choice are protected by the Fourteenth Amendment.**

The Arkansas General Assembly and the Governor approved the Act in furtherance of the Arkansas Constitution's mandate to the State to "maintain a general, suitable and efficient system of free public schools and [to] adopt all suitable means to secure to the people the advantages and opportunities of education." Article XIV, § 1. In furtherance of this constitutional mandate, the Arkansas General Assembly, in passing the Act, found:

(1)     The students in Arkansas's public schools and their parents will become more informed about and involved in the public educational system if students and their parents are provided greater freedom to determine the most effective school for meeting their individual educational needs. . . .

(2)     Giving more options to parents and students with respect to where the students attend public school will increase the responsiveness and effectiveness of the state's schools because teachers, administrators and school board members will have added

7

incentive to satisfy the educational needs of the students who reside in the district; and

      (3)    These benefits of enhanced quality and effectiveness in our public schools justify permitting a student to apply for admission to a school in any school district beyond the school district in which the student resides, provided that the transfer by the student does not conflict with an enforceable judicial decree or court order remedying the effects of past racial segregation in the school district.

ARK. CODE ANN. §6-18-1901(b).

Based on its findings, the General Assembly established the public school choice program "to enable a student to attend a school in a non-resident district, subject to the limitations under §6-18-1906." It requires each school district to participate in the public school choice program, §6-18-1903, and to adopt by resolution specific standards for acceptance and rejection of applications, §6-18-1903(b). The General Assembly defined the process for applying for transfer, authorized the Department of Education to resolve disputes over transportation issues, and authorized the Department of Education to implement an appeal process. *See* ARK. CODE ANN. §§6-18-1904, 1905, 1907.

Plaintiffs' right to participate in the public school choice program under the Act is a protected property interest under federal law and Arkansas law. In *Goss v. Lopez*, the Supreme Court held that a state must recognize as a property interest a student's legitimate entitlement to a public education. 419 U.S. 565 (1975).

The plaintiffs have a right to participate in the public school choice program under the Act for the upcoming school year, and Blytheville School District must participate in the public school choice program and afford plaintiffs these rights. *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972), informs the present case. *Roth* was a procedural due process case in which the Court set out the scope of procedural due process protection under the Fourteenth Amendment. The Court also set out the contours of what a "property" interest is and stated that "[p]roperty interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577. In other words, "property interests are created by state law, not by the United States Constitution." *J.K. v. Minneapolis Pub. Sch.*, 849 F. Supp. 2d 865, 870 (D. Minn. 2011) (citation omitted). The Constitution will protect a "person's state-created property interest only if the person has a legitimate claim of entitlement under state law to that interest." *Id.* at 871.

The decision in *J.K.* illustrates that the plaintiffs in the present case have a protected property interest in the public school choice program. In *J.K.*, the plaintiff brought a procedural due process challenge in response to the school district's decision to transfer him to a different high school because of his participation in a hazing incident. *Id.* The court held that J.K. had a protected

9

property interest in a public education, not a protected property interest in attending the school of his choice. *Id.* at 871. In fact, the Minnesota legislature specifically decreed that students did not have a right to attend a particular public school. *Id.* at 872. The court noted that had the school district passed a regulation affording students the right to attend a particular high school for all four years, it would be in violation of state law because "the [d]istrict cannot change a state law through school-board regulation." *Id.*

In addition to this property interest, the right to public-school choice established in the Act is built on a foundation that includes the protected liberty interest "of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 534-35 1925). "Corresponding to the right of control, it is the natural duty of the parent to give his children education suitable to their station in life . . .." *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923). Accordingly, a state cannot prohibit a parent from engaging a teacher to instruct his child in the German language. *Id*. Consistent with the fundamental rights of parents to be actively involved in the education of their children, the General Assembly created public-school choice to provide parents and children a right to shape their education through inter-district transfer. This liberty interest is also deprived by Blytheville School District's Resolution.

10

Similar to the plaintiff in *J.K.*, Arkansas affords the plaintiffs a fundamental constitutional right to a free and adequate public education. *See Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe,* 578 F.3d 753 (8th Cir. 2009) (Arkansas statute requiring school districts with fewer than 350 students to be annexed by another did not trigger strict scrutiny under the due process and equal protection clauses of the Fourteenth Amendment, although statute affected public education, which was a fundamental right under Arkansas law, because education was not a fundamental right under the Fourteenth Amendment).

In addition to the fundamental right to a free and adequate public education, the Act affords Arkansas citizens the right to participate in the public school choice program. Unlike the plaintiff's dilemma in *J.K.* where Minnesota did not grant its citizens the right to attend the school of their choice, Arkansas did create such an interest. The Act created and defined by statutory terms the plaintiffs' liberty and property interest in the public school choice program, securing their interest in the benefits of participation the public school choice program.

The Act became effective on April 16, 2013. *See* ARK. CODE ANN. §6-18-1909, Section 7 (1). Notice of any exemption by any school district, including the Blytheville School District, under limitation (b), is required by April 1. Because the Act was not approved until April 16, 2013, the General Assembly denied any school district the limitation (b) exemption for the upcoming school year 2013-14.

11

Blytheville School District has attempted to "change a state law through a school-board regulation" by claiming an exemption for the 2013-14 school year. *J.K.*, 849 F. Supp. 2d at 872. The plaintiffs have a property interest in participating in the public school choice program for the 2013-14 school year that cannot be denied by Blytheville School District's illegal board resolution. Blytheville School District, like every other district that cannot claim a limitation (a) exemption, therefore must participate in public school choice this year, and plaintiffs have the right to apply for a school-choice transfer and have the non-resident district consider the application. ARK. CODE ANN. §6-18-1905. They have a right to appeal a denial of their application.  ARK. CODE ANN. §6-18-1907 (b)(1).

Blytheville School District Resolution denies plaintiffs their rights under the Act. If the Court does not enjoin the Blytheville School District's attempt to opt-out of the public school choice program for the upcoming year, the plaintiffs and their children will be denied the right to apply to attend a non-resident school district as provided for under the Act. Denial of this right will deprive plaintiffs and their children of all of the benefits in the Act that the General Assembly found would flow from a public school choice program, and will cause irreparable harm to plaintiffs and their children. *See* ARK. CODE ANN. §6-18-1901(b).

Further, if the Court does not grant plaintiffs injunctive relief, their children may be foreclosed from ever participating in the public school choice program.

The Blytheville School District has based its attempt to opt out of the public school choice program on its past school racial segregation. *See* Exhibit B. At this time, the Blytheville School District's attempt to opt out of the public school choice program under limitation (b) of the Act cannot be effective because the deadline for notification of April 1 had passed prior to the effective date of the Act. ARK. CODE ANN. §6-18-1906(b)(3). If plaintiffs are not able to exercise their right to participation in the public school choice program in the upcoming school year, they may be forced to mount still another challenge concerning the 2014-15 school year if Blytheville School District attempts again to opt out of the public school choice program under limitation (b). If unsuccessful, plaintiffs would have missed their only open window for public school choice.

This is precisely the type of irreparable harm that supports a motion for preliminary injunction. *Rogers Group, Inc.*, 629 F.3d at 789. The harm is impossible to measure in monetary damages; without a preliminary injunction, the plaintiff's children will be unable to take advantage of the rights granted to them by the Act in 2013-14 and may be unable to exercise public school choice at any time.

**B.    THE PLAINTIFFS ARE VERY LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

The likelihood of plaintiff's success on the merits is the most significant factor of the *Dataphase* test. *Laclede Gas Co. v. St. Charles County*, 713 F.3d 413,

2013 U.S. App. LEXIS 8378, *16 (8th Cir. 2013). The Resolution violates

plaintiffs' rights under the Act because it illegally opts out of the school choice

program for the 2013-14 school term, thereby denying plaintiffs their right to

participate in the public school choice program. The Resolution bears no rational

relation to a legitimate state interest and violates the plaintiffs' due process and

equal protection rights and their rights under the Arkansas Civil Rights Act. These

claims are likely to be successful and warrant the entry of a preliminary injunction.

### 1.     Blytheville School District has acted under color of law.

In order to maintain their claim under 42 U.S.C. §1983 and the Arkansas

Civil Rights Act, plaintiffs must show that the challenged actions were taken under

color of law and deprived them of a right secured by the Fourteenth Amendment

and the Arkansas Constitution. 42 U.S.C. §1983; ARK. CODE ANN. §16-123-105(a).

There is no question that Blytheville School District, as a duly created and existing

public school district established under the laws of Arkansas, is a state actor and

may be held liable under 42 U.S.C. §1983. *Young v. Blytheville Sch. Dist.,* 2013

Ark. App. 50, pp. 9-10, (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690

(1978)) (local governing bodies can be sued under section 1983 for monetary,

declaratory, or injunctive relief where the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation,

or decision officially adopted and promulgated by that body's officers); *see also*

*Wolfe v. Fayetteville Ark. Sch. Dist.*, 600 F. Supp. 2d 1011, 1019 (W.D. Ark. 2009) (a plaintiff may establish municipal liability under §1983 "by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' . . . ." *Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell,* 436 U.S. at 691); *Doe v. Sch. Dist. of the City of Norfolk*, 340 F.3d 605, 613 (8th Cir. 2003) (according to *Monell*, entities such as the School District can only be sued under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Nor can it be challenged that Blytheville School District adopted a policy, in the form of the Resolution, that resulted in the deprivation of plaintiffs' rights under the Act, and under the Arkansas Constitution. This establishes the statutory requirement of acting "under of color of law" for 42 U.S.C. §1983 and ARK. CODE ANN. §16-123-105(a).

> **2.      The Blytheville School District's Resolution violated plaintiffs' equal protection rights.**

The Equal Protection Clause of the Fourteenth Amendment is enforceable under 42 U.S.C. § 1983. This clause provides as follows: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." By adopting the Resolution, the Blytheville School District has denied each and every resident of the Blytheville School District, including plaintiffs and their children, the

benefits, rights and privileges of the public school choice program under the Act.

The Blytheville School District intentionally discriminated against plaintiffs in

order to prevent them from exercising their right to participate in the public school

choice program. The denial of plaintiffs' rights treats them differently than

similarly situated parents and children in Arkansas, and the Blytheville School

District cannot articulate a rational basis for the difference in treatment.

*Every* school district must participate in the public school choice program

consistent with §6-18-1903. Only limitations (a) and (b)  permit a school district to

opt out of the public school choice program. Neither applies to Blytheville School

District. *See* ARK. CODE ANN. §6-18-1906(a), (b). The Act also provides the date

by which any school district claiming limitation (b) must give notice that it is

opting out. That date is April 1. Because the Act did not take effect until April 16,

2013, even if limitation (b) were available, the Act prevents Blytheville School

District from claiming an exemption under limitation (b) for the upcoming school

year. Yet, notwithstanding this language, Blytheville School District intentionally

adopted the Resolution knowing it would deny to plaintiffs and all other residents

of Blytheville School District rights under the Act that are afforded to similarly

situated citizens across the State of Arkansas.

Blytheville School District's adoption of the Resolution in these

circumstances was completely arbitrary and capricious and irrational. The

Resolution serves no legitimate governmental interest recognized in Arkansas. For the 2013-14 school year, the General Assembly clearly intended that all public school children be afforded the benefits of the Act uniformly, except for those schools exempt under limitation (a), as to which the Supremacy Clause would likely pre-empt the Act in any event. If the General Assembly had determined that the Act should be effective in the 2013-14 school year, it could have established an opt-out date after the effective date of the Act for school districts meeting the requirements of limitation (b). In its wisdom, the General Assembly chose not to do so, and Blytheville School District by passing the Resolution may not thwart or usurp the power of the General Assembly to enact laws for the State of Arkansas.

Local-government actions in obvious opposition to state law have been found irrational and arbitrary and capricious under equal-protection analysis. In *Allegheny Pittsburgh Coal Co. v. County Com.,* 488 U.S. 336 (1989), the county commission valued petitioner's land based on its recent purchase price, but made only minor changes in the assessments of land which had not been recently sold. The state required land to be taxed uniformly, but the county commission did not apply that policy evenhandedly to all similar property. *Id.* at 698. The Court observed that States have broad powers to impose and collect taxes, and may even divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable. The Court,

17

however, was aware of no "West Virginia statute or practice which authorized individual counties of the State to fashion their own substantive assessment policies independently of state statute. The Webster County assessor has, apparently on her own initiative, applied the tax laws of West Virginia in the manner heretofore described, with the resulting disparity in assessed value of similar property." *Id.* at 697-98 (citation omitted). The Court held that the assessments violated the Equal Protection Clause because "[i]ntentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property." 488 U.S. at 345 (citations omitted). The Court stressed that "'[t]he *equal protection clause* . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class.' *Hillsborough v. Cromwell,* 326 U.S. 620, 623 (1946)." 488 U.S. at 345 (emphasis in original).

As in *Allegheny Pittsburgh Coal*,  the Act requires all school districts to participate in the public school choice program, subject only to the limitations under §6-18-1903, and §6-18-1906 (a) and (b). Further, the Act provides a specific date by which a school district may opt out of the public school choice program if it meets the requirements of either limitation (a) or (b). Just as with the West Virginia legislature, the Arkansas General Assembly has broad powers, and in its

18

establishment of the public school choice program imposed different requirements for participation in the public school choice program for different school districts based on whether the school district met the requirements of limitations (a) or (b). Limitations (a) or (b) are the only paths a school district has to be exempt from the public school choice program in the State of Arkansas, and limitation (b) is not open this year.

Blytheville School District, however, on its own initiative, declared its limitation (b) exemption from the Act for the upcoming school year, notwithstanding the deadline prescribed by Arkansas law. This slammed the door to public school choice on all parents and children in the Blytheville School District. It acted in direct opposition and defiance to the interests of the State of Arkansas and the public policy set forth in the Act, as well as its legal duties under the Act. Blytheville School District adopted the Resolution to avoid the effect of the Act, and thereby selected its patrons, including plaintiffs and their children, for discriminatory treatment by depriving them of the right to participate in the public school choice program enjoyed by citizens in other similarly situated school districts. The Resolution contravenes the express purposes, intent, and goals of the Act. By definition it serves no legitimate purpose and is not rationally related to a legitimate purpose.

Similarly, in *Sunday Lake Iron Co. v. Wakefield*, the United States Supreme Court stated the "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co*, 247 U.S. 350, 352-53 (1918); *see also Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (successful equal protection claims may be brought by a "class of one" where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment). The Blytheville School District in passing the Resolution misused its power and intentionally and arbitrarily discriminated against plaintiffs and all others in the district by its improper execution of the Act, denying them the rights and benefits enjoyed by citizens in every other school district in Arkansas.

      **3.**    **The Blytheville School District's Board Resolution violated Plaintiffs' procedural due process rights.**

As discussed in Section III(A)(1)(a) of this Brief, plaintiffs and their school-age children have a liberty and a property interest in the school choice program under the Act as defined and protected by the laws of Arkansas, including the Act. A procedural due process challenge requires the plaintiff to show: (1) the state deprived him of some life, liberty, or property interest; and (2) the state deprived

him of that interest without sufficient process. *Krentz v. Robertson Fire Protection Dist.*, 228 F.3d 897, 902 (8th Cir. 2000).

Where a school district interferes with a student's protected interests in public education, the student "must be given some kind of notice and afforded some kind of hearing . . . the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Horton v. Marshall Pub. Sch.*, 769 F.2d 1323, 1333 (8th Cir. 1985) (internal citation omitted). In *Horton*, the Eighth Circuit rejected plaintiff's argument that their procedural due process rights were violated because, although they may have had a protected property interest, the school district's policy of excluding minor children from school unless they had a parent or legal guardian living in the district "involved patently objective facts which [were] not the type which would foreseeably be controverted." *Id.*

Blytheville School District has not afforded plaintiffs any, and certainly not adequate, process to challenge the exemption claimed under limitation (b). Through its resolution claiming an exemption, Blytheville School District forecloses other school districts from accepting plaintiffs as students for the upcoming 2013-14 school year. Plaintiffs had no opportunity to be heard or to appeal this deprivation of their interests.

21

Unlike *Horton*, Blytheville School District's resolution does not concern objective facts unlikely to be controverted. The plaintiffs vehemently deny that Blytheville School District may exempt itself from the Act for the 2013-14 school year. Blytheville School District is unable to exempt itself for the upcoming school year because the deadline to apply for an exemption passed before the Act took effect. Secondly, the case law relied on by Blytheville School District to justify its claim for an exemption clearly does not satisfy the requirements of limitation (b).

Blytheville School District's claim of exemption from the Act for the 2013-14 school year was a misuse of power that effectively acts as a final and non-appealable decision. The plaintiffs' only recourse to challenge the validity of Blytheville School District's claimed exemption is through this lawsuit, as there was no notice or hearing to determine the validity of the exemption. By claiming an exemption for the 2013-14 school year without allowing for a hearing on the merits of that exemption, Blytheville School District violated plaintiffs' procedural due process rights.

**4.    The Blytheville School District's Board Resolution violated plaintiffs' substantive due process rights.**

Plaintiffs and their school-age children have a property interest and a liberty interest in the school choice program under the Act as defined and protected by the laws of Arkansas, including the Act. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v.*

22

*McDonnell*, 418 U.S. 539, 558 (1974), which includes "the exercise of power without any reasonable justification in the service of a legitimate governmental objective," *see*, *e.g.*, *Daniels* v. *Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). While due process protection in the substantive sense limits what the government may do in both its legislative, *see*, *e.g.*, *Griswold* v. *Connecticut,* 381 U.S. 479 (1965), and its executive capacities, *see*, *e.g.*, *Rochin* v. *California,* 342 U.S. 165 (1952)**,** defining what is fatally arbitrary depends on whether legislative or executive action is at issue. See *County of Sacramento v. Lewis,* 523 U.S. 833, 845-46 (1998), where a police officer was involved in a high speed automobile chase to apprehend a person driving a motorcycle, and a passenger on the motorcycle was killed when the motorcycle tipped over and the police officer's vehicle ran over him. The passenger's family filed suit under 42 U.S.C. § 1983 alleging a deprivation of his due process right to life under the Fourteenth Amendment. The Court in *County of Sacramento* stated: "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking in a constitutional sense.'" *County of Sacramento*, 523 U.S. at 846 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 129 (1992)) . In the present case, plaintiffs

do not challenge state legislation, but do challenge the arbitrary and capricious abuse of power by the Blytheville School District in its execution of the Act.

"Education is perhaps the most important function of state and local governments." *Brown v. Bd. of Educ.,* 347 U.S. 483, 493 (1954). Where children will attend school is a controversial issue. Parents, including plaintiffs, agonize over which school will provide their children with the best opportunities to fulfill their academic potential and improve their station in life. The State of Arkansas recognizes the importance of education and has wrestled with the issue of school choice for decades.

The General Assembly is charged with the constitutional responsibility to "maintain a general, suitable and efficient system of free public schools and [to] adopt all suitable means to secure to the people the advantages and opportunities of education." Ark. Const. XIV. With this mandate in mind, the General Assembly drafted the Act as a suitable piece of education legislation "to secure to the people the advantages and opportunities of education." In the Act, the General Assembly outlined in detail the importance of public school choice in serving individual educational needs. It found, among other things, a value in having parents and students "more informed about and involved in the public educational system" by "provid[ing] greater freedom to determine the most effective school for meeting their individual educational needs," noted that there "is no right school for every

student," declared "permitting students to choose from among different schools with differing assets will increase the likelihood that some at-risk students will stay in school, and that other, more motivated students will find their full academic potential," and concluded that "giving more options to parents and students with respect to where the students attend public school will "incenti[vise] teachers, administrators and school board members to satisfy the educational needs of the students who reside in the district." ARK. CODE ANN. §6-18-1901(b). Recognizing that there may be some school districts that are under desegregation orders related to student assignments due to past racial segregation, and others who currently may be under court orders or federal court mandates remedying the effects of past racial segregation, the General Assembly carved out two limitations to a school district's required participation in the public school choice program. Otherwise, every school district must participate in the public school choice program in accordance with the Act.

   In light of the stated purposes of the Act, and the acknowledged importance of public school choice to the citizens of Arkansas, the Blytheville School District's adoption of the Resolution to opt out of the public school choice program for the upcoming school year, as well as its spurious claim of support for its declared exemption, was arbitrary and capricious. It was done with deliberate indifference to the provisions of the Act, and for the purpose of intimidating and

frustrating plaintiffs' and other residents' rights and expectations under the Act. Blytheville School District arbitrarily and capriciously has declared that the law of Arkansas does not penetrate the boundaries of its school district, and that the important education interests involved in public school choice simply do not reach citizens of Blytheville. This is the quintessence of governmental abuse of authority.

Further, Blytheville School District's adoption of the Resolution was in bad faith because it contravenes the Act and was based on impermissible reasons of race. For too long Arkansas school districts were forced by the federal courts to undo the vestiges of racial desegregation, and have been saddled with the stigma of being under desegregation court orders remedying the effects of past racial desegregation. Now, Blytheville School District chooses to embrace the stigma of past racial desegregation and to claim without any reasonable basis in fact that it is currently subject to a desegregation order or mandate of a federal court remedying the effects of past racial segregation in order to claim the exemption requirements of limitation (b) of the Act. Blytheville School District's reliance on the seminal case of *Brown v. Board of Education, supra*, and on its own cases from racial discrimination two generations ago that are no longer alive or are unrelated to any desegregation mandate or plan as required by the Act, is a cynical, shocking example of use of race to deny plaintiffs their rights under the Act. The only way

26

Blytheville School District can be called to account for this arbitrary and abusive use of government power is by a civil rights lawsuit.

The Blytheville School District's deprivation of plaintiffs' rights under the Act is arbitrary and capricious, serves no legitimate governmental interest, is irrational, is in bad faith and violates plaintiffs' substantive due process rights.

### C.   THE BALANCE OF EQUITIES WEIGHS STRONGLY IN FAVOR OF GRANTING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION.

The balance of equities "requires a district court to consider the balance between the harm to the movant and the injury that granting the injunction will inflict on other interested parties." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993). The primary function of a preliminary injunction "is to preserve status quo until, upon final hearing, a court may grant full effective relief." *Id.* at 490 (quoting *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir. 1989)).

The balance of equities weighs strongly in favor of granting the plaintiffs' motion for preliminary injunction. Based on the facts and the law, plaintiffs have a likelihood of success on the merits. The harm that plaintiffs will suffer is much greater than that which Blytheville School District, and any other interested

27

parties,[1] will suffer if a preliminary injunction issues. Blytheville School District's actions are irrational, arbitrary and capricious, and in bad faith. It will suffer absolutely no harm should a preliminary injunction issue.

The status quo, meaning plaintiffs' rights before Blytheville School District passed the Resolution for the 2013-14 school year, allowed the plaintiffs to apply for an inter-district transfer. Justice requires the Court to intervene to preserve the status quo until the merits are determined.

## D.   THE PUBLIC INTEREST IS SERVED BY GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.

The Eighth Circuit has held that "it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). The State of Arkansas recognizes that the right to a free and adequate public education is a constitutionally protected fundamental right of its citizens. *See supra*, Section B(1). In passing the Act, the Arkansas General Assembly recognized that the freedom to transfer among school districts is an effective method to ensure the adequacy of a public education in the state. The public interest is served by granting this Motion for Preliminary Injunction because Blytheville School District's effort to exempt itself from the Act has no basis in protecting its citizens' right to an adequate public education; instead, it is an action

---

[1]  Other interested parties presumably may include other Arkansas school districts attempting to use limitation (b) for the 2013-2014 school year.

28

borne out of self-preservation despite the wants and needs of families and school children in the district.

There is a second, more general, public interest at stake involving the ability of subdivisions of state government to rewrite legislation passed by the General Assembly. In this case, Blytheville School District has read limitation (b) to go into effect immediately for the 2013-14 school year even though, by its own terms, it cannot go into effect until the 2014-15 school year.

The Third Circuit Court of Appeals case, *Kuhar v. Greensburg-Salem School Dist.*, 616 F.2d 676 (3d Cir. 1980), is directly on point. The plaintiff in *Kuhar* sought to enforce the terms of the Age Discrimination in Employment Act Amendments of 1978 ("ADEA"), which changed the mandatory retirement age from 65 to 70, before they were set to go into effect. The plaintiff was going to turn 65 in the period between date of passage of the ADEA and the date the ADEA was to go into effect. The district court granted the plaintiff relief, prohibiting the school district from firing him at the end of the school year, after he had turned 65. *Kuhar v. Greensburg-Salem School Dist.*, 466 F. Supp. 806 (W.D. Pa. 1979). The Third Circuit reversed, finding that the statute had not gone into effect yet and to grant the plaintiff's requested relief would "entail rewriting federal legislation which specifically provided that the expansion in coverage of individuals was not to become effective until January 1, 1979." *Kuhar*, 616 F.2d at 679; *see also J.K.*,

849 F. Supp. 2d at 872 (". . . the [school] [d]istrict cannot change a state law through school-board regulation"). The district court's opinion "undermine[d] the explicit congressional intent to allow a delay period between passage and enforcement of the statute." *Kuhar*, 616 F.2d at 679. The Third Circuit found the district court's grant of plaintiff's requested relief was unwarranted, illogical, and "would invite a myriad of constitutional claims based on 'irrationality' by those whose statutory rights do not accrue until some future date." *Id.*

In this case, Blytheville School District is attempting to exempt itself from the Act before it is legally able to do so. The Act states that individual school districts must file for an exemption by April 1 in order for the exemption to apply for the following school year. ARK. CODE ANN. §6-18-1906(b)(3). The Act itself was not enacted until April 16, 2013.  ARK. CODE ANN. §6-18-1909. The General Assembly did not intend to allow exemptions for the 2013-14 school year; otherwise, it would have provided a different exemption deadline for the 2013-14 school year.

It is against the public interest of the citizens and the State of Arkansas to allow subdivisions of state government to ignore or rewrite legislation. The public interest is served by granting the motion for preliminary injunction.

## IV.   CONCLUSION

All of the factors that the Court is to consider in deciding whether to issue a preliminary injunction favor the granting of an injunction in this case. The status quo should be preserved pending a final hearing on the merits. This Court should enjoin Blytheville School District to rescind the Resolution immediately and notify all districts to which plaintiffs and its other patrons have applied to transfer of its rescission.

Respectfully submitted,

WILLIAMS & ANDERSON PLC
111 Center Street, 22nd Floor
Little Rock, Arkansas  72201
Telephone:  (501) 372-0800
Facsimile:  (501) 372-6453

By:   /s/ Jess Askew III
Jess Askew III, Ark. Bar No. 86005
jaskew@williamsanderson.com
Marie-B Miller, Ark. Bar No. 84107
mmiller@williamsanderson.com
Alec Gaines, Ark. Bar No. 2012277
againes@williamsanderson.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May, 2013, I electronically filed the foregoing with the Clerk of Court using the Electronic Case Filing system.  I have also sent the foregoing via U.S. Mail to the following:

Richard Atwill, Superintendent
Blytheville School District No. 5
405 West Park Street
Blytheville, AR  72315

/s/Jess Askew III
Jess Askew III