IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JAMES E. STEVENSON III,
SHARYN STEVENSON, HEATH ADKISSON,
LORI ADKISSON, RYAN BRASWELL,
MELISSA BRASWELL, OLIVER COPPEDGE,
TRACY COPPEDGE, GEORGE A. HALE III,
STEPHANIE HALE, JEFF LANGSTON,
AND MISSY LANGSTON,                                                        PLAINTIFFS

vs.                              NO. 3:13-cv-127-KGB

BLYTHEVILLE SCHOOL DISTRICT NO. 5                                          DEFENDANT

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant, Blytheville School District No. 5, by its attorneys, respectfully submits its Memorandum Brief in Support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b).

### I.

### FACTUAL BACKGROUND

Plaintiffs allege that they are citizens of Blytheville, Arkansas. *See* Complaint, ¶¶ 2, 3, 4, 5, 6, 7 and 8. Defendant Blytheville School District No. 5 ("Blytheville") is a public school district created and existing pursuant to the laws of the State of Arkansas with the power to sue and be sued. *See* Plaintiffs' Complaint, ¶ 9. The Arkansas Legislature passed and adopted Act 227 of 2013, otherwise known as the Arkansas Public School Choice Act of 2013, on April 16, 2013. Ark. Code Ann. § 6-18-1901, *et seq.* The Act was immediately made effective upon adoption through an emergency clause. *See* Complaint, ¶¶ 16 and 17 and Exhibit A to the Complaint. The Act, among other things, establishes a procedure by which students attending

one school district may attend public school in a nonresident district, subject to certain limitations contained within the Act. *See* Plaintiffs' Complaint, ¶ 19.

The Public School Choice Act of 2013 contains two legislative limitations on the applicability of the Act. Ark. Code. Ann. § 6-18-1906(a) provides as follows:

> (a) If the provisions of this subchapter conflict with a provision of an enforceable desegregation court order or a district's court-approved desegregation plan regarding the effects of past racial segregation in student assignment, the provisions of the order or plan shall govern.

Ark. Code Ann. § 6-18-1906(b) states as follows:

> (b)(1) A school district annually may declare an exemption under this section if the school district is subject to the desegregation order or mandate of a federal court or agency remedying the effects of past racial segregation.
>
> (2)(A) An exemption declared by a board of directors under this subsection is irrevocable for one (1) year from the date the school district notifies the Department of Education.
> (B) After each year of exemption, the board of directors may elect to participate in public school choice under this section if the school district's participation does not conflict with the school district's federal court-ordered desegregation program.
>
> (3) A school district shall notify the department by April 1 if in the next school year the school district intends to:
> (A) Declare an exemption under this section; or
> (B) Resume participation after a period of exemption.

On April 29, 2013, pursuant to Ark. Code Ann. § 6-18-1906(b)(1), the Blytheville School District's Board of Education adopted a resolution declaring an exemption from the Arkansas Public School Choice Act of 2013. *See* Plaintiffs' Complaint, ¶¶ 33, 34 and Exhibit C to Plaintiffs' Complaint.

## II.

## APPLICABLE LAW

A federal court has the responsibility to ensure that it has subject matter jurisdiction. *See Buck v. Fed. Emergency Management Agency*, 210 U.S. Dist. LEXIS 142014. Pursuant to Fed. R. Civ. P. 12(h)(3), a federal court must dismiss a lawsuit where it has no subject matter jurisdiction. In considering a claim to dismiss for lack of subject matter jurisdiction, the Court may consider matters outside of the pleadings without converting the motion into a motion for summary judgment. *Drevlow v. Lutheran Church*, 991 F.2d 468, 470 (8th Cir. 1993). Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction, its very power to hear the case, there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Plaintiffs assert this Court's jurisdiction pursuant to 28 U.S.C. §1331 which provides that district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1331. For the reasons set forth herein, Plaintiffs' jurisdictional reliance is misplaced and this Court should dismiss this action for want of subject matter jurisdiction.

## III.

## ARGUMENT

**A.  This Court Lacks Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331**

Plaintiffs, in their Complaint filed May 20, 2013, seek declaratory and injunctive relief against Blytheville School District No. 5 in connection with its action through its duly elected

Board of Directors in declaring an exemption from the requirements of the Arkansas Public School Choice Act of 2013; this legislation was enacted on April 16, 2013 with an emergency clause. In an effort to invoke this Court's jurisdiction, Plaintiffs, in addition to claims made under the Arkansas Civil Rights Act and various state statutes, allege due process and equal protection claims under 42 U.S.C. § 1983.

The Supreme Court has held that a "suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S. Ct. 585, 60 L. Ed. 987 (1916). This lawsuit does not pass that test because the law that this suit arises out of is a recent act passed by the Arkansas General Assembly (Act 1227 of 2013), known as the Arkansas Public School Choice Act of 2013.

Only suits based on federal law and not state law create federal question jurisdiction. *Louisville & N R. Co. v.* Mottley, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908). The issues presented by this case are solely or predominantly state issues which are not even ripe for adjudication in a court of law. If or when these issues ripen into a lawsuit, that lawsuit should be heard in a state court. This claim arises out of a state statute; in the interests of judicial economy this claim should be brought in state court. In order for this lawsuit to be heard in federal court, the heart of the lawsuit must arise under the United States Constitution or treaties of the United States. 28 U.S.C. § 1331. The heart of this case is a state statute, more specifically the Arkansas Public School Choice Act of 2013 (Act 1227).

Further, this lawsuit should be brought in state court in the interests of fairness and convenience. Bringing their case in state court will not prejudice the Plaintiffs.

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). At its essence, Plaintiffs' Complaint seeks declaratory and injunctive relief with respect to a law recently enacted by the State of Arkansas dealing exclusively with public education within its borders. The United States Supreme Court has long recognized the sound division of labor between state and federal courts which governs the application of 28 U.S.C. § 1331. *See Grable & Sons Metal Products, Inc. v. Daru Engineering*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). Plaintiffs allege as the basis for their Complaint certain technical irregularities in connection with the interpretation and enforcement of the recent enactment. *See* Plaintiffs' Complaint, ¶¶ 32, 33, 34, 35, 36 and 37. Ark. Code Ann. § 6-18-1907(a) provides that the state Board of Education may promulgate rules to implement the Act. At this juncture, no state circuit court has had an opportunity to weigh in on the Act, much less the state's highest appellate court. In fact, the present situation before this Court is exactly what the United States Supreme Court was referring to when discussing the sound division of labor between state and federal courts governing the application of Section 1331. *Grable, supra. See also Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 810, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986).

This litigation turns on an interpretation of state law which should properly be decided by an Arkansas state court. Plaintiffs have a number of potential remedies under state law. In *Grable & Sons*, the United States Supreme Court set out a four prong approach to establish federal-question jurisdiction. A state law claim: (1) must necessarily raise a federal claim; (2) that is actually disputed; (3) that is also substantial; and (4) that may be resolved in a federal

form without disturbing the balance of federal and state judicial responsibilities. *See Grable & Sons*, 545 U.S. at 314. The crux of the Complaint for Declaratory and Injunctive Relief filed herein relates entirely to the Arkansas Public School Choice Act of 2013 adopted as law in the State of Arkansas by emergency proclamation some five weeks ago. At its essence, this Complaint is a state law claim related to the interpretation and application of that law. While Plaintiffs have attempted to raise a federal claim, such claim is not substantial in relation to the universal application of the Act; more importantly, such interpretation, at this time, given the infancy of the Act, cannot be resolved in a federal forum without disturbing the explicit balance of federal and state judicial responsibilities.

### B. Standing to Sue

A litigant must be entitled to have the court decide the merits of the dispute or of particular issues and in the present case the Plaintiffs have failed to allege that either James E. Stevenson III or Sharyn Stevenson have a constitutionally protected right or interest in the adjudication of the present claim. Accordingly they do not have standing to sue. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

When looking at standing to sue, the question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 663 (1962). The Stevensons are the non-custodial grandparents of children that live with and are cared for by their biological parents, Stephanie Hale and George A. Hale III. Noncustodial grandparents do not even have a fundamental legal

right to visit their grandchildren. *Johnson v. City of Cincinnati,* 310 F. 3d 484, 514, 2002 U.S. App. LEXIS 20418 (2002).

Further, the judicial system has long recognized the fundamental right of parents to make the decisions concerning the care, custody, and control of their children. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Although Defendant asserts that all claims alleged in this case are non-existent or premature, the legal parents or guardians are the only ones who would have standing to bring those claims, if and when they ever become ripe for adjudication. Simply put, neither James nor Sharyn Stevenson has a right to seek a transfer for their grandchildren, thus they have been denied no right, and are not entitled to any remedy or relief.

### C. Failure to State a Claim Upon Which Relief Can Be Granted

In order to state a claim which will survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Plaintiffs must include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plaintiff merely states outcomes that are possible rather than plausible. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully in causing the plaintiff injury. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Here, the Plaintiffs do not even allege in their Complaint that the applications of their children have been rejected by the nonresident school district to which they seek transfer. Instead, paragraph 43 of the Complaint simply states that school districts are uncertain whether they may accept transfers of students from Blytheville School District in the coming school year under the Act, and that they

have not been accepted as of the date the lawsuit was filed. In short, they do not allege any actual harm. They only allege a possibility.

As a result, this complaint is not ripe for suit and, therefore, no relief can be granted to the Plaintiffs. In order for the claim to be ripe, the facts of the case must have matured into an existing substantial controversy that warrants judicial intervention. In this case there is no ripeness. "The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967).

The nonresident school district to which a school choice transfer is sought has until August 1 of the school year in which the student seeks to begin the fall semester to notify the parent and the resident district (in this case, Blytheville) in writing as to whether the student's application has been accepted or rejected. Ark. Code Ann. § 6-18-1905(b)(1). Further, a student whose application to transfer under § 6-18-1905 is rejected by the nonresident district may request an administrative appeal hearing before the Arkansas State Board of Education to reconsider the transfer. Ark. Code Ann. § 6-18-1907(b)(1). The Complaint is fatally deficient and must be dismissed because it fails to state that a nonresident school has rejected the Plaintiffs' children. And, even if we pretend the transfer applications had been rejected before suit was filed, Plaintiffs have failed to allege that Plaintiffs have exhausted their administrative relief and remedies granted by § 6-18-l907(b)(1). No such facts are alleged because those facts

do not exist and may never exist. As a result, this complaint should be dismissed until the Plaintiffs have exhausted the administrative remedies afforded them by the Act. There can be no Due Process violation if the Plaintiffs have not yet gone through the administrative process and exhausted the administrative relief available to them.

### D.     Failure to Join a Required Party under Rule 19

This case should be dismissed because Plaintiffs have failed to join all necessary parties as required by Fed. R. Civ. P. 19. Disposing of this action in the absence of the nonresident school district to which the Plaintiffs seek transfer impedes the ability of the nonresident school district (Armorel School District) to protect its interests. The nonresident school district to which transfer is sought has a financial interest in accepting possible transfers and is a necessary party to this lawsuit. Rule 19 does not require that the absent party actually possess an interest. Instead, Rule 19 only requires the movant to show that the absent party "claims an interest relating to the subject of the action." *Davis v. U.S.,* 192 F. 3d 951, 958 (10th Cir. 1999). In the absence of the nonresident school districts, the Court cannot grant complete relief to the existing parties. Failure to include the nonresident school district as a party may result in multiple lawsuits. Multiple lawsuits would result in unnecessary litigation expenses that, in the interests of judicial economy, could be prevented by joining the nonresident district as a party in one lawsuit in state court if or when the issues raised in this case ripen to the point there is an actual justiciable issue. Additionally, judgment rendered in the absence of the nonresident school districts would prejudice the absent party who may or may not have other reasons for rejecting the transfer.

## IV.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully submits that the Court should grant the Motion to Dismiss.

>Respectfully submitted,
>
>BEQUETTE & BILLINGSLEY, P.A.
>425 West Capitol Avenue, Suite 3200
>Little Rock, AR 72201-3469
>Phone: (501) 374-1107
>Fax:    (501) 374-5092
>Email: jbequette@bbpalaw.com
>
>By:           **/s/ Jay Bequette**
>          Jay Bequette, No. 87012
>
>REID, BURGE, PREVALLET & COLEMAN
>417 North Broadway, P.O. Box 107
>Blytheville, Arkansas 72316-0107
>Telephone: (870) 763-4586
>Fax: (870) 763-4642
>E-mail:   rbpc@sbcglobal.net
>
>By:          **/s/ Robert L. Coleman**
>          Robert L. Coleman, No. 80031
>
>*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 6, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Jess Askew III, Esq.  jaskew@williamsanderson.com
Marie-B. Miller, Esq.  mmiller@williamsanderson.com
Alec Gaines, Esq.  againes@williamsanderson.com
Williams & Anderson, PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201

          **/s/ Jay Bequette**
          Bar Number 87012
          BEQUETTE & BILLINGSLEY, P.A.
          425 West Capitol Avenue, Suite 3200
          Little Rock, AR 72201-3469
          Telephone: (501) 374-1107
          Fax: (501) 374-5092
          E-mail: jbequette@bbpalaw.com

J:\MARGO\Blytheville Schools\Brief in Support of Motion to Dismiss.final.docx