**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JAMES E. STEVENSON III,
SHARYN STEVENSON, HEATH ADKISSON,
LORI ADKISSON, RYAN BRASWELL,
MELISSA BRASWELL, OLIVER COPPEDGE,
TRACY COPPEDGE, GEORGE A. HALE III,
STEPHANIE HALE, JEFF LANGSTON,
AND MISSY LANGSTON**                                            **PLAINTIFFS**

**v.**                          **Case No. 3:13CV00127 KGB**

**BLYTHEVILLE SCHOOL DISTRICT NO. 5**                          **DEFENDANT**

<u>**OPINION AND ORDER**</u>

Before the Court is plaintiffs' motion for preliminary injunction (Dkt. No. 4). Blytheville School District No. 5 (the "Blytheville District") responded to the motion, as directed by the Court (Dkt. No. 16). On June 17, 2013, the Court entered an order requesting additional briefing by the parties and directed the Blytheville District to respond to the motion for preliminary injunction (Dkt. No. 15). The Court, in that order, also set a hearing on the then-pending motion to dismiss as well as on plaintiffs' motion for preliminary injunction.[1] The Blytheville District filed its brief in response to order entered June 17, 2013 (Dkt. No. 18). Plaintiffs filed their prehearing brief (Dkt. No. 19). The Blytheville District filed its response to plaintiffs' prehearing brief (Dkt. No. 20). Plaintiffs filed their response to order entered June 17, 2013 (Dkt. No. 21).

On June 24, 2013, the Court conducted a hearing on the motion to dismiss and motion for preliminary injunction. For the following reasons, plaintiffs' motion for preliminary injunction is denied.

---

[1] The Court ruled orally at the June 24, 2013, hearing on the Blytheville District's pending motion to dismiss and issued a separate written order memorializing the ruling.

## I.      Factual Background

The Court set forth the factual background for this matter in its separate order denying the Blytheville District's motion to dismiss.  The Court incorporates, but will not repeat, that discussion here.  In their motion, plaintiffs request, pursuant to Federal Rule of Civil Procedure 65(a), that this Court enter a preliminary injunction enjoining the Blytheville District to rescind its Resolution to opt out of Act 1227 of 2013, also known as the Arkansas Public School Choice Act of 2013 (the "2013 Act") for the upcoming school year.  Plaintiffs assert that a preliminary injunction is necessary to protect plaintiffs' state-law fundamental right to a public school education, which plaintiffs contend includes exercising their right of public school choice under the 2013 Act.  Plaintiffs also assert that a preliminary injunction is necessary to protect plaintiffs from the Blytheville District's denial of their substantive and procedural due process rights and right to equal protection under the Fourteenth Amendment to the United States Constitution and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

## II.      Preliminary Injunction Standard

When determining whether to grant a motion for preliminary injunction, this Court considers:  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003); *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 114 (8th Cir. 1981).  A preliminary injunction is an extraordinary remedy, and the party seeking the injunction bears the burden of establishing the four *Dataphase* factors.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  No single factor is determinative.  *Dataphase*, 640 F.2d at 113.  The focus in on "whether the balance of the equities so favors the

movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined." *Id*.

### A.      Probability of Success on the Merits

Plaintiffs purport to bring claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act.  The Court will focus on plaintiffs' federal 42 U.S.C. § 1983 claim.  To maintain this claim, plaintiffs must show that the challenged actions were taken under color of law, by an action pursuant to official municipal policy or custom, and deprived them of a right secured by the Fourteenth Amendment.  42 U.S.C. § 1983.  The Court concludes plaintiffs likely will succeed in demonstrating the challenged actions were taken under color of law and pursuant to an official municipal policy.  However, the Court determines plaintiffs have a low probability of succeeding on their claim that the Blytheville District's actions deprived them of a right secured by the Fourteenth Amendment.

The Blytheville District, as a public school district established under the laws of Arkansas, is a state actor and may be held liable under 42 U.S.C. § 1983.  *Braden v. Mountain Home School District*, 903 F.Supp.2d 729, 735 (W.D. Ark. 2012) ("A school district may be considered a 'person' for purposes of § 1983 liability."); *Young v. Blytheville Sch. Dist.*, 2013 Ark App. 50, at 9-10 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  A plaintiff may establish municipal liability under 42 U.S.C. § 1983 by demonstrating that his or her constitutional rights were violated by an "action pursuant to official municipal policy." *Monell*, 436 U.S. at 691 (internal quotation omitted).   "Official policy involves 'a deliberate choice to follow a course of action. . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th

Cir. 1990).  Plaintiffs claim that, by adopting the Resolution exempting itself from the 2013 Act, the Blytheville District adopted a policy that allegedly deprived plaintiffs of their rights.  The Court agrees that the Blytheville District set policy by adopting the Resolution.

The Court now examines whether plaintiffs are likely to succeed in demonstrating that these acts deprived plaintiffs of a right secured by the Fourteenth Amendment.  In their complaint, plaintiffs allege the Blytheville District violated the 2013 Act by adopting the Resolution and attempting to exempt itself from the 2013 Act because, according to plaintiffs, the 2013 Act "does not allow any school district in the State of Arkansas to declare an exemption under [L]imitation (b) for the school year beginning in the fall of 2013" (Dkt. No. 2, at 9). Plaintiffs also contend that, even if the 2013 Act permits a school district to declare a Limitation (b) exemption for the school year beginning in the fall of 2013, the Blytheville District does not qualify for and should not be permitted to declare a Limitation (b) exemption.  Plaintiffs contend that, as a consequence of the allegedly unlawful action of the Blytheville District, plaintiffs "will be deprived of their right to school choice under the Act unless appropriate injunctive relief is granted by this Court" (Dkt. No. 2, at 11).

For purposes of resolving this motion for preliminary injunction, the Court determines it need not decide whether the Blytheville District violated the 2013 Act by impermissibly declaring a Limitation (b) exemption.  Violations of state law, state-agency regulations, and state-court orders do not, by themselves, state a claim under 42 U.S.C. § 1983.  *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995).  "Section 1983 guards and vindicates federal rights alone."  *Id*.  Even if the Blytheville District violated the 2013 Act, a question this Court declines to reach today when evaluating plaintiffs' request for injunctive relief, the Court determines plaintiffs have a low probability of succeeding on the merits of establishing a violation of their

4

constitutional rights.   "In deciding whether to grant a preliminary injunction 'likelihood of success on the merits is most significant.'"  *S.W. ex rel. Wilson v. Lee's Summit R-7 School Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995); *S&M Constructors, Inc. v. Foley Co.*. 959 F.2d 97, 98 (8th Cir. 1992)).  If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors – irreparable harm, balance of the harms, and the public interest – weigh in the party's favor.  *See CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. . . ."); *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005) ("[A]n injunction cannot issue if there is no chance of success on the merits. . . .").  The Court will examine each of plaintiffs' constitutional claims:  substantive due process, procedural due process, and equal protection.

### 1.    Due Process

The Due Process Clause of the Fourteenth Amendment forbids states to "deprive any person of life, liberty, or property, without due process of law. . . ."  U.S. Const. amend. XIV, §1. The Due Process Clause of the Fourteenth Amendment has two components:  namely, substantive due process and procedural due process.  *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999).  Here, plaintiffs allege both a substantive and procedural due process violation.

In support of their due process claims, plaintiffs contend that, because the 2013 Act does not permit Limitation (b) exemptions for the 2013-14 school year, the Blytheville District's Resolution serves no legitimate governmental interest recognized in Arkansas and that the Blytheville District's actions were completely and entirely irrational and at odds with the law and public policy of Arkansas (Dkt. No. 2, at 13-14).   Specifically, plaintiffs claim that the

Blytheville District took its actions because "it disagrees with and disputes the purposes and policies underlying" the 2013 Act and "seeks to intimidate parents and citizens and deprive them from exercising their rights under the Act;" "is motivated at least in part by race in depriving plaintiffs and their children of the benefits of school choice under the Act;" and was adopted "in bad faith and for impermissible reasons of race" (Dkt. No. 2, at 14).

### a.    Substantive Due Process

Substantive due process "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Singleton* 176 F.3d at 424.  Substantive due process has generally been limited to matters relating to marriage, procreation, and the right to bodily integrity.  *See Albright v. Oliver*, 510 U.S. 266, 272 (1994).  The United States Supreme Court has, as a general rule, been unwilling to expand the concept of substantive due process beyond these core areas.  *See, e.g., Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 228 (1985) (Powell, J., concurring).  For example, "[t]he majority rule is that state-created employment or contract rights are generally not entitled to the protections of substantive due process." *Peterson v. North Dakota*, 240 F.Supp.2d 1055, 1063 (D. N.D. 2003).  In this case, on the record before it and given the current state of controlling law, this Court determines that plaintiffs' claim of a substantive due process violation is unlikely to succeed.  Plaintiffs' claim is based on an alleged state-law fundamental right to exercise public school choice under the 2013 Act; that alleged right is unlikely to meet the high standard for substantive due process.  It seems more akin to the state-created employment or contract rights that generally are not entitled to the protections of substantive due process.

Even if plaintiffs could meet this high standard and establish a substantive due process right, to prevail on their substantive due process claim, plaintiffs also must show that the challenged action "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *see also Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). The shocks-the-conscience test "is no calibrated yard stick." *County of Sacramento*, 523 U.S. at 847. It is, by its nature, imprecise. *Id.* To satisfy it, plaintiffs must allege that the "government action complained of is sufficiently outrageous or truly irrational, that is, something more than arbitrary, capricious, or in violation of state law." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001) (internal quotations omitted). Mere negligence will never give rise to a substantive due-process violation. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). Even actions that can be categorized as grossly negligent or reckless will not suffice. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000).

Based on the record currently before the Court, including but not limited to those considerations identified here, the Court concludes plaintiffs have not established a likelihood of succeeding on their claim that the Blytheville District's actions were conscience-shocking. There is no evidence that the Blytheville District intended to harm plaintiffs. To the contrary, the evidence is that the Blytheville District believed that the challenged Resolution was an option available to the Blytheville District under the 2013 Act.

The Blytheville District, in its response to plaintiffs' motion for preliminary injunction, advocates for a statutory interpretation of the 2013 Act which would permit school districts to declare an exemption from the 2013 Act even after April 1, 2013, for the 2013-2014 school year (Dkt. No. 17, at 3-7). The 2013 Act provides that the "State Board of Education may promulgate rules to implement" the 2013 Act. Ark. Code Ann. § 6-18-1907.

The Blytheville District cites to the May 1, 2013, informational memo from the Arkansas Department of Education (the "May 1, 2013, Memo") which addresses the 2013 Act and the April dates in the 2013 Act.  The May 1, 2013, Memo states in pertinent part:  "The ADE will not attempt to reestablish a deadline that is set in law.  However, so school districts and the ADE can properly administer all aspects of Act 1227 in an orderly fashion and so that parents, students, patrons and school district leaders may be aware of those school districts which are subject to desegregation orders or federal agency mandates remedying the effects of past racial segregation, the ADE requests that school districts notify the ADE of any exemption by Friday, May 17, 2013." (Hearing Ex. 4, at 2; Dkt. No. 19-2, at 3).  The Court acknowledges plaintiffs submit a declaration from Tom W. Kimbrell, Ed.D., Commissioner of Education, which plaintiffs assert makes clear the May 1, 2013, Memo is "simply informative in nature and does not carry with it the force of law or regulation" (Dkt. No. 19-2, at 1).

As for the basis of the claimed exemption, the Blytheville District set forth the *Franklin* case and correspondence from the Regional Director of the Office for Civil Rights at the United States Department of Health, Education and Welfare ("HEW") (Dkt. No. 16-2, 16-3, 16-4, 16-5, 16-6, 16-7, 16-8, 16-9, and 16-10; Hearing Ex. 15).  Richard Atwill, superintendent of the Blytheville Schools, testified at the hearing.  He stated that he recommended the Resolution to the Blytheville District.  His understanding of the *Franklin* case and the HEW letters related to a request that the Blytheville District do away with the "Freedom of Choice" program referenced in one of the HEW letters (Dkt. No. 16-9).  He testified he believed that, even though the *Franklin* case was dismissed, the Blytheville District was under an obligation not to return to Freedom of Choice.

Mr. Atwill disagreed with plaintiffs' contention that the Arkansas Department of Education has stated "two times since May 2012" that it is unaware of any desegregation order that applies to the Blytheville District.  He based his disagreement, in part, on conversations he had with a representative of the Equity Department at the Arkansas Department of Education regarding the Blytheville District.

The Court relies on the entire record in this matter to reach its decision.  The Court does not adopt or endorse the Blytheville District's or plaintiffs' interpretation of the 2013 Act, view of the status or impact of the *Franklin* litigation or letters from the HEW, or interpretation of comments by representatives of the Arkansas Department of Education.  Instead, the Court cites these matters as examples from the record solely as a basis on which to evaluate whether plaintiffs are likely to succeed on their claim that the Blytheville District acted in a conscience-shocking manner for substantive due process analysis.  The Court concludes plaintiffs are not likely to succeed on this claim.

### b.      Procedural Due Process

To establish a claim based on an alleged violation of their due process rights, plaintiffs must establish that they had a constitutionally protected property interest of which they were deprived.  *Davenport v. University of Arkansas Board of Trustees*, 553 F.3d 1110, 1114 (8th Cir. 2009); *Bituminous Materials, Inc. v. Rice Co., Minn.*, 126 F.3d 1068, 1070 (8th Cir. 1997).  In general, property interests are created by state law, not by the United States Constitution.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those

benefits.").  The Constitution protects a person's state-created property interest only if the person has a "legitimate claim of entitlement" under state law to that interest, not merely a subjective expectancy.  *Bituminous*, 126 F.3d at 1070.

This Court acknowledges that, in *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that a state must recognize as a property interest a student's legitimate entitlement to a public education and that such a property interest may not be terminated for misconduct without some minimum due process protection.  The right plaintiffs claim here exceeds that which the Supreme Court has recognized.   The right plaintiffs claim here is an alleged state-law fundamental right to exercise public school choice under the 2013 Act.  In the context of public employment, "[f]or a property interest to arise, a government employee must have a 'legitimate claim of entitlement' to continued employment, as opposed to a mere subjective expectancy." *Batra v. Board of Regents of Univ. of Nebraska*, 79 F.3d 717, 720 (8th Cir. 1996).  The Court recognizes that, here, plaintiffs may not have more than a mere subjective expectancy of choice under the 2013 Act.  Plaintiffs concede they have not been rejected by the non-resident districts to which they applied.  There is no proof in the record that, but for the Blytheville District's adopting the Resolution, plaintiffs would be admitted by the non-resident districts to which they applied.

The Court also questions whether plaintiffs have stated a procedural due process violation at all, given the nature of their allegations.  Although plaintiffs use the language of procedural due process in their complaint and in their briefs, plaintiffs have not given any indication of how their procedural rights were violated.  Plaintiffs have not identified any process that they were deprived of and that they wanted the Blytheville District to provide before adopting the Resolution.  No proof on this point was submitted at the hearing, and no argument addressing

this point was developed by counsel. Plaintiffs claim only that they have not been afforded any procedural avenue to challenge the Resolution.

At this stage of the proceedings, it seems to the Court that plaintiffs' entire case proceeds from the premise that the Blytheville District was not permitted to adopt the Resolution at all, based on plaintiffs' interpretation of the language of the 2013 Act. The Eighth Circuit has held that a procedural due-process claim did not have to be submitted to the jury when the plaintiff "offered no evidence or argument at any point during the trial describing what procedural protections were available or should have been used" in connection with an alleged deprivation of their right under the Fourteenth Amendment to procedural due process. *Vaughn v. Ruoff*, 304 F.3d 793, 795 (8th Cir. 2002). Another court, examining a procedural due-process claim in the context of a challenge to a school district's search policy, applied the rationale of *Vaughn* to dismiss plaintiffs' claim for violation of procedural due-process rights. *Hough v. Shakopee Public Schools*, 608 F.Supp.2d 1087, 1112-13 (D. Minn. 2009). In *Hough*, the district court explained: "A plaintiff who seeks only to stop a challenged practice entirely, rather than to be afforded procedural protections in connection with that practice, does not have a procedural due-process claim." *Id.* at 1112. Based on the way plaintiffs have proceeded to date, the Court questions whether plaintiffs have stated and intend to pursue an alleged procedural due process violation.

Even if plaintiffs intend to pursue an alleged procedural due process violation, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."

*Zinermon v. Burch*, 494 U.S. 113, 126 (1990).  The focus in a procedural due process inquiry is not on whether an individual has been denied a constitutionally protected interest for unfair, improper, and otherwise wrongful reasons.  Rather, the focus is on the adequacy of the state procedures in place for the protection of such interests.  *See Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998); *Peterson*, 240 F.Supp.2d at 1064.

"The Court is mindful that "[d]ue process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.' *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))." *Washington v. Ladue School District Board of Education*, 564 F.Supp.2d 1059, 1064 (E.D. Mo. 2008).  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and 'in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *Clark v. Kansas City Missouri School District*, 375 F.3d 698, 702 (8th Cir. 2004).  The Supreme Court has explained that a student facing interference with the protected interest in public education "must be given some kind of notice and afforded some kind of hearing. . . . [T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss*, 419 U.S. at 579.

Here, before adopting the Resolution, the Board of Education of the Blytheville District met in special session and by a vote of six to zero declared the Blytheville District exempt from Act 2013 (Hearing Ex. 3).  There was no testimony presented by plaintiffs at the hearing that this was a meeting conducted without notice or was closed to the public.  In fact, a witness testified she attended past meetings of the Board of Education of the Blytheville District on occasion.  Testimony established that, after this vote by the Board of Education members, the headline in

the paper the next day reported on the Resolution's adoption.  There was no testimony presented by plaintiffs that, at that time and prior to filing suit, plaintiffs attempted in any way to request members of the Board of Education of the Blytheville District revisit this issue.

The Court also recognizes it is well-established that, so long as there are adequate state procedures available in which the plaintiff can seek redress, due process is satisfied.  *See, e.g., Fields v. Kelly*, 986 F.2d 225, 228 (8th Cir. 1993) (adequate post-deprivation remedy available under North Dakota law through application for writ of mandamus).  This Court questions on the record developed to date whether plaintiffs have availed themselves of the state procedures available and whether plaintiffs should be required to do so.  In *Washington*, plaintiff filed suit alleging violations of his civil rights pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fifth, and Fourteenth Amendments to the United States Constitution.  Plaintiff alleged that he had a constitutionally protected property right to a free public education in the Ladue District under the Missouri Constitution.  564 F.Supp. at 1061.  He had been attending classes within the Ladue District but, following the results of a residency investigation, was removed from the classroom and the Ladue District student registration roll  *Id*.  "Following an exchange of telephone calls and correspondence" between plaintiff's counsel and the Ladue District, plaintiff was notified that he would not be allowed to attend school in the Ladue District but that he could appeal the superintendent's decision to the Ladue School Board and have a hearing.  Plaintiff did not appeal the decision and did not attend the offered hearing.  *Id*. at 1062.

None of the parties disputed that plaintiff had a property interest in a free public education.  *Id.* at 1064.  Rather, they disagreed as to the manner in which plaintiff had to vindicate the alleged "taking" of that right.  In other words, as the district court explained, the issue simply put was what process was due.  *Id*.  The district court dismissed plaintiff's claim for

failure to exhaust his administrative remedies, adopting the Ladue District's view that since plaintiff did not take advantage of the offered hearing, plaintiff's claims had to be dismissed.  *Id.* at 1065.  The court rejected plaintiff's view.  Plaintiff agreed that, in a "contested case" under the Missouri Administrative Procedures Act, he must exhaust his administrative remedies.  *Id.* at 1064.  Plaintiff argued, however, that exhaustion was not required in his case; he claimed his was not a "contested case" because the Ladue District did not cite any "applicable statute or regulation" requiring an administrative hearing on the residency issue.  *Id.*

As the court observed, "[t]he irony of Plaintiff's argument and indeed, the fundamental flaw in Plaintiff's reasoning" was evidenced by plaintiff's complaint in that what he alleged – the denial of a constitutionally protected property right, *i.e.*, his right to a free public education, without due process – was the very basis giving rise to a "contested case" in the state system and a federal constitutional cause of action.  *Id.*  The court went on to explain, "[t]he constitutional violation actionable [in a procedural due process claim] under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.  This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."  *Id.* at 1065.  The court concluded the Missouri Administrative Procedures Act required plaintiff to exhaust his administrative remedies, reasoning exhaustion is required "[to prevent] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial

14

review." *Id*. at 1066 (citing *Shelton v. Farr*, 996 S.W.2d 541, 543 (Mo. App. W.D. 1999); *KC Motorcycle Escorts, L.L.C. v. Easley*, 53 S.W.3d 184, 187-88 (Mo. App. W.D. 2001)).

The Blytheville District advances an argument that plaintiffs here have failed to exhaust their administrative or state law remedies. The Blytheville District contends plaintiffs could have followed the course taken by what it terms "similarly situated parents" in the Forrest City, Arkansas, School District. Those parents submitted applications for their children to attend the Palestine-Wheatley School District for the 2013-2014 school year. The parents' counsel represents in an appeal filed with the Arkansas State Board of Education that those applications were denied based upon "the sole premise that the Forrest City School District is exempt from the School Choice Act due to it being under a desegregation order" (Dkt. No. 18-1, at 1). In their pending appeal, the parents assert that "[t]he exemption claimed by the Forrest City School District was untimely and is void as a matter of law" and that the "Forrest City School District does not meet the requirements of the School Choice Act in that it is not under an order of desegregation or mandate of a federal court or agency remedying the effects of past racial segregation" (Dkt. No. 18-1, at 1-2).

It is unclear whether the Arkansas State Board of Education will reach these issues when deciding the appeal. The May 1, 2013, Memo states in pertinent part: "Please note that Act 1227 [the 2013 Act] does not provide the ADE the authority to rule a particular exemption valid or invalid" (Hearing Ex. 4, at 2; Dkt. No. 19-2, at 3). The Court acknowledges Dr. Kimbrell's declaration, which calls into question the force of this statement (Dkt. No. 19-2, at 1).

Regardless of whether the Arkansas State Board of Education reaches these issues, the Blytheville District contends that, under Arkansas law, a state judicial review is available once a final administrative order is entered. *See* Ark. Code Ann. §§ 25-15-201, *et seq*. The Blytheville

District maintains that the constitutional challenges to the 2013 Act may be raised in a state proceeding because Arkansas courts have authority to determine issues of the constitutionality of Arkansas statutes. *See* Ark. Code Ann. § 25-15-212(h)(1) (permitting state court review of an administrative decision if it was "[i]n violation of constitutional or statutory provisions").

Plaintiffs do not concede that they should be required to take an appeal to the Arkansas State Board of Education. They contend that their rights have been violated as a result of the Blytheville District adopting the Resolution and claiming exemption from the 2013 Act, without regard to acts taken by the non-resident districts to which they seek to transfer. Further, plaintiffs maintain that neither the 2013 Act nor the Arkansas Department of Education Emergency Rules Governing the Public School Choice Act of 2013 set forth a procedure for challenging the Blytheville District's acts (Hearing Exs. 2, 6).

In prehearing briefing, the Blytheville District acknowledged that "[t]he District's exemption declaration pursuant to the Act does not allow students in the District to apply to transfer to a non-resident district for the 2013-1014 school year" (Dkt. No. 18, at 6). At the hearing, counsel for the Blytheville District argued that other districts, including the non-resident districts to which plaintiffs seek to transfer, could take a different position and contend that the 2013 Act does not bar them from admitting students from the Blytheville District because the non-resident districts interpret the 2013 Act differently.

In *Hardy v. Malvern School District*, plaintiffs challenged a prior version of the 2013 Act, which is no longer in effect. In unpublished opinions, the district court examined the nature of the Arkansas State Board of Education's authority and role in regard to the prior version of the 2013 Act. *See* Civ. No. 08-6094, 2010 WL 956696, *7-8 (W.D. Ark. Mar. 16, 2010). In that case, the Court determined "exhaustion of administrative remedies was not required." *Id.* at *8,

n.10.  As the Court observed, the Arkansas State Board of Education "largely exists to develop educational policy, and its role in the overall transfer process is extremely limited.  It can resolve disputes under the School Choice Act and hear appeals.  Plaintiffs have not appealed to the board; the board cannot proactively force Plaintiffs to appeal or enforce the statute against them."  *Id.* at *8.  It is unclear whether, under the 2013 Act, the Arkansas State Board of Education has or will assume a different role.

For all of these reasons, the Court cannot state that plaintiffs are likely to succeed on the merits of their procedural due process challenge.

## 2.     Equal Protection

Plaintiffs contend that "the parental and student rights to participate in the school choice program under the provisions of the Act are rights, privileges and benefits of citizenship equally available to all citizens of Arkansas, including plaintiffs and their children" (Dkt. No. 2, at 15). Plaintiffs claim that, by adopting the Resolution, the Blytheville District "has denied each and every resident of the Blytheville School District, including plaintiffs and their children, the benefits, rights and privileges of the school choice program under the Act" (Dkt. No. 2, at 15). Plaintiffs contend the Blytheville District's actions serve no legitimate governmental interest and, in fact, are opposed and contrary to the legitimate interests of the State of Arkansas in the 2013 Act.  (Dkt. No. 2, at 15).  They also claim the Blytheville District's actions are arbitrary and capricious and irrational in view of the interests and public policy set forth by the state in the 2013 Act.  (Dkt. No. 2, at 15).

Plaintiffs also assert the Blytheville District has taken its actions because "it is motivated at least in part by opposition and defiance to the interests of the state and the public policy set forth in the act and seeks to intimidate and frustrate the legitimate rights and expectations of the

plaintiffs and other residents of the Blytheville District for the upcoming school year" (Dkt. No. 2, at 15).  Plaintiffs maintain the Blytheville District is motivated, at least in part, by race in depriving plaintiffs and their children of the benefits of school choice and has adopted the Resolution in bad faith and for impermissible reasons of race (Dkt. No. 2, at 16).

The Equal Protection Clause of the Fourteenth Amendment forbids a state to "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1. Generally, this clause prohibits discrimination by the government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.

Here, plaintiffs claim the Blytheville District violated that portion of the clause requiring a state generally treat similarly situated persons alike.  *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006).  "Conversely, a state is not required to treat differently situated persons alike, as long as the state provides an adequate justification for treating one group of persons differently from another."  *Hough*, 608 F.Supp. at 1114.

The ability to participate in the 2013 Act is not a suspect classification.  Therefore, government policies that treat those able to participate in the 2013 Act and those unable to participate in the 2013 Act are not subject to strict scrutiny but only to rational-basis review.  *See Board of Trustees v. University of Alabama v. Garrett*, 531 U.S. 356, 366-67 (2001).  Under rational-basis review, "if there is any rational relationship between the disparity of treatment and some legitimate governmental purpose," then the challenged policy does not violate the Equal Protection Clause.  *Heller v. Doe*, 509 U.S. 312, 320 (1993); *see also Garrett*, 531 U.S. at 367.

Plaintiffs contend that *Allegheny Pittsburgh Coal Co. v. County Commissioner of Webster County, West Virginia*, 488 U.S. 336 (1989), controls.  In that case, the Supreme Court

determined that assessments on real property by Webster County, West Virginia, violated the Equal Protection Clause. The Court reasoned, in part, that West Virginia's Constitution and laws provided that all property of the kind held by petitioners should be taxed at a rate uniform throughout the state according to its estimated market value. *Id*. at 345. The Court noted "[t]here is no suggestion in the opinion of the Supreme Court of Appeals of West Virginia, or from any other authoritative source, that the State may have adopted a different system in practice from that specified by statute; we have held that such a system may be valid so long as the implicit policy is applied even-handedly to all similarly situated property within the State." *Id*.

Here, on the evidence submitted and arguments made to the Court, there is a suggestion that Arkansas may have adopted a different system from that which plaintiffs advocate. Arkansas has recognized by statute and practice that "Boards of directors of local school districts are prohibited from granting legal transfers. . . when either the resident or the receiving district is under a desegregation-related court order or has ever been under such a court order." Ark. Code Ann. § 6-18-317. This statute currently in effect differs from the 2013 Act, but it implicates a student's transferring from a resident to a non-resident district and permits that student to be treated differently depending on whether either district "has ever been under" a desegregation-related court order. Although the facts were different, it is interesting to note that the application of this statute was the subject of an equal protection challenge in *Edgerson v. Clinton*, 86 F.3d 833 (8th Cir. 1996). In that case, on the facts presented, the district court determined, and the Eighth Circuit affirmed that, the challenged policies of the Gould, Grady, Star City, and Dumas School Districts had no segregative effect.

Further, as explained, the Blytheville District followed the timeline set out in the May 1, 2013, Memo when it informed the Arkansas State Board of Education of its Resolution and declared exemption. *Cf.* 488 U.S. at 345 (recognizing that the tax assessor's practice was contrary to that of the guide published by the West Virginia Tax Commission as an aid to local assessors in the assessment of real property).

To say that a policy is unreasonable or misguided is very different from saying that a policy is irrational. The Equal Protection Clause requires only that a "rational relationship" exist between the challenged practice and the asserted government interest. On the record before the Court, the Court determines plaintiffs have a low probability of success on the merits of their equal protection claim.

To the extent plaintiffs attempt to advance an argument that the Blytheville District's adopting the Resolution was motivated by race or has a disparate impact based on race, the Court questions plaintiffs' ability to succeed on such a claim:

> The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race. It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups. But our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact.

*Washington v. Davis*, 426 U.S. 229, 239 (1976) (internal citation omitted).

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). *See also Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 283 (1979). The Court finds that, at this stage of the proceeding and based on the record before the Court, plaintiffs are unlikely to succeed on a claim that the Blytheville District

had a discriminatory intent or motive in implementing the exemption.  At this point, the Court determines it has not heard evidence that the decisionmaker, in this case the Blytheville District Board, selected a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.  *See United States v. Farmer*, 73 F.3d 836, 841 (8th Cir. 1996) (examining whether the three-strikes statue, 18 U.S.C. § 3559(c), violated the Equal Protection Clause); *Foster v. Wyrick*, 823 F.2d 218, 219 (8th Cir. 1987) (examining whether allegation that prison's employment practices and procedures had discriminatory impact stated a cause of action under the Equal Protection Clause).

The contours of plaintiffs' argument on this point are not well defined.  To the extent plaintiffs rely on events regarding the KIPP:  Delta, Inc., to support this argument, the Court notes that KIPP:  Delta, Inc., involved the Arkansas State Board of Education's review of a charter school under laws different than those being discussed here.  Mr. Atwill testified that the Blytheville District's involvement in the charter school review process is different than the Blytheville District's involvement in implementing the 2013 Act.  Plaintiffs presented no testimony or evidence to the contrary.  Plaintiffs did submit a March 1, 2013, Memo to the State Board of Education from the Arkansas Department of Education staff which stated:  "The Arkansas Department of Education is unaware of any pending desegregation orders or decrees affecting either [the Blytheville District or Helena-West Helena District]" (Hearing Ex. 1; Dkt. No. 19-1, at 2).  Mr. Atwill testified that, based on conversations he had with a representative of the Equity Department at the Arkansas Department of Education, he disagreed with this characterization.  He also questioned what information the Arkansas Department of Education reviewed before making the statement.  The Court also notes that the KIPP Delta Public Schools is an open-enrollment public charter school that must admit all applicants who apply, unless

21

there are more applicants than spaces, in which case KIPP Delta Public Schools must fill spaces according to a random, anonymous lottery (Hearing Ex. 1; Dkt. No. 19-1, at 3-4).  It is unclear to this Court how that admissions policy implicates race, if plaintiffs contend in some way it does.

For all of these reasons, the Court assesses a low probability of plaintiffs' success on the merits of their equal protection claim.

### B.   Threat of Irreparable Harm

To warrant a preliminary injunction, a party must make a sufficient showing of irreparable harm.  Even though the test is flexible, "under any test the movant is required to show the threat of irreparable harm.  Thus, the absence of a finding of irreparable injury is alone sufficient ground" to deny a preliminary injunction.  *Dataphase*, 640 F.2d at 114 n.9 (citations omitted).  *See also Caballo Coal Co. v. Ind. Mich. Power Co*., 305 F.3d 796, 800 (8th Cir. 2002). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Wilson*, 696 F.3d at 778 (quoting *Roudachevski v. All-Am. Care Ctrs., Inc*., 648 F.3d 701, 706 (8th Cir. 2011); *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

From the complaint, briefs, and arguments made, it is difficult to discern what precisely plaintiffs claim is the threat of irreparable harm.  That harm may be the right to participate at all in public school choice under the 2013 Act or that harm may be that non-resident districts to which plaintiffs seek to transfer have not accepted plaintiffs' children (Dkt. No. 2, at 11).  The former implicates parties before this Court.  The latter implicates non-parties and may implicate claims subject to exhaustion.

22

In their complaint, plaintiffs allege that "plaintiffs and plaintiffs' children will suffer irreparable injury if they are not permitted to exercise their rights to public school choice in the coming school year due to the opposition and obstruction of the Blytheville School District" (Dkt. No. 2, at 13).   Plaintiffs presented powerful, emotional witness testimony at the preliminary injunction hearing.   Each plaintiff witness who took the stand described, among other things, her concern for her children, her children's education, and her children's future. These witnesses gave first-hand accounts of worrying about having a "good teacher" or a "bad teacher" for the year, worrying about the assignment of a long-term substitute teacher in a classroom, worrying about declining standardized test scores from "advanced" to "proficient," deciding to hire tutors for their children, and explaining to the Court, although admittedly raising perhaps only informally with a Blytheville District, the alleged failure to comply with a student's individual 504 Plan.   The Court does not discount these concerns and in no way attempts to diminish these concerns.

But the Court observes that most, if not all, parents share these concerns for their children, their children's education, and their children's future.   The types of concerns described are not unique to these plaintiffs nor are they unique to the Blytheville District.   One witness admitted she was not naïve enough to believe moving her children to another district would eliminate all problems.   Plaintiffs' witnesses acknowledged these types of concerns may vary year to year and day to day but exist for all schools, parents, and students.   These types of concerns exist regardless of the educational environment and, more importantly, regardless of an individual's ability to participate in the 2013 Act.

In their complaint, plaintiffs also claim "[d]ue to their tender years and their need to continue and progress in their primary and secondary education, the children of the plaintiffs will

suffer irreparable harm if they are not permitted to exercise their rights to public school choice and attend a non-resident district in the upcoming school year" (Dkt. No. 2, at 12).  The Court notes that, in their complaint's demand for relief, plaintiffs do not specifically include this request (Dkt. No. 2, at 19).  This Court does not have before it the parties necessary to grant through preliminary injunction the relief plaintiffs seek in this regard.  This Court cannot require under the 2013 Act a non-party non-resident district to permit plaintiffs to attend school in the upcoming school year.  Requesting such relief implicates the Blytheville District's concern that not all parties may be joined in this action or before this Court and that not all state-provided remedies may have been exhausted.

For these reasons, this Court determines that the type of harm alleged is not sufficient to entitle plaintiffs to the preliminary injunctive relief they seek.

### C.       Balance of the Harm and Public Interest

Of course, the issues in this lawsuit will have an impact on the public interest.  The evidence presented did not show that that factor or the balance of the harms weigh significantly in favor of plaintiffs to overcome the failure to establish a likelihood of success on the merits or to establish irreparable harm.

### III.    Conclusion

The Court has no doubt that plaintiffs will suffer the harm and hardships about which they testified at the hearing.  But federal courts cannot remedy every harm or hardship.  In this case, the Court finds that plaintiffs have a low probability of succeeding on the merits of their claims and have not demonstrated the threat of irreparable harm sufficient for this Court to grant plaintiffs' request for a preliminary injunction.

The Court emphasizes the narrow scope of this decision.   It relates only to plaintiffs' request for prospective relief.   The Court expresses no opinion on whether, in the abstract, the Blytheville District acted prudently when it decided to adopt the Resolution.   The Court simply holds that, based on the record currently before it, no basis exists under the United States Constitution to enjoin the Blytheville District.

SO ORDERED this the 1st day of July, 2013.

Kristine G. Baker
United States District Judge