**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JAMES E. STEVENSON III,
SHARYN STEVENSON, HEATH ADKISSON,
LORI ADKISSON, RYAN BRASWELL,
MELISSA BRASWELL, OLIVER COPPEDGE,
TRACY COPPEDGE, GEORGE A. HALE III,
STEPHANIE HALE, JEFF LANGSTON,
AND MISSY LANGSTON**                                       **PLAINTIFFS**

**v.**                           **Case No. 3:13CV00127 KGB**

**BLYTHEVILLE SCHOOL DISTRICT NO. 5**                      **DEFENDANT**

## OPINION AND ORDER

Before the Court is the motion to dismiss filed by Blytheville School District No. 5 (the "Blytheville District") (Dkt. No. 7). Plaintiffs have responded (Dkt. No. 11), and the Blytheville District has replied (Dkt. No. 12). On June 17, 2013, the Court entered an order requesting additional briefing by the parties (Dkt. No. 15). That order also set a hearing on the motion to dismiss as well as on plaintiffs' motion for preliminary injunction (Dkt. No. 4).[1] The Blytheville District filed its brief in response to order entered June 17, 2013 (Dkt. No. 18). Plaintiffs filed their prehearing brief (Dkt. No. 19). The Blytheville District filed its response to plaintiffs' prehearing brief (Dkt. No. 20). Plaintiffs filed their response to order entered June 17, 2013 (Dkt. No. 21). On June 24, 2013, the Court conducted a hearing on the motion to dismiss and motion for preliminary injunction. At the Blytheville District's request, the Court ruled from the bench on the pending motion to dismiss before proceeding to consider the motion for preliminary injunction. The Court now memorializes that oral ruling in this order. For the following reasons, the Blytheville District's motion to dismiss is granted in part and denied in part.

---

[1] Plaintiffs' motion for preliminary injunction will be addressed by separate order.

I.      **Factual Background**

A.      **The Complaint**

Plaintiffs, other than James E. Stevenson III and Sharyn Stevenson (the "Stevensons")[2] and Tracy Coppedge,[3] have a minor child or children who reside within the area of the Blytheville District.  Act 1227 of 2013, the Arkansas Public School Choice Act of 2013 (the "2013 Act"), was adopted as the law of Arkansas on April 16, 2013.  The General Assembly and the Governor made the 2013 Act effective immediately upon adoption through an emergency clause.  Plaintiffs allege their children are entitled to participate in the school choice program during the 2013-2014 school year.  Plaintiffs' children are students in primary and secondary grades, kindergarten through high school, of public school.  The 2013 Act established a public school choice program to enable students to attend school in a non-resident district, subject to certain limitations.

Plaintiffs contend that the Blytheville District, a public school district acting under Arkansas law, resolved to opt-out of the 2013 Act in a manner that is not authorized by the Act and violates plaintiffs' Fourteenth Amendment rights.  Plaintiffs have identified specifically their Fourteenth Amendment rights to Due Process and Equal Protection.  For these reasons, plaintiffs

_____

[2]   The Stevensons are described in the complaint as "citizens of Arkansas, long-time residents of Blytheville, Arkansas, and Blytheville School District, grandparents of children within Blytheville School District, and taxpayers whose real property taxes go to support the operations and facilities of Blytheville School District.  They are actively engaged in efforts of community and economic development within Blytheville and assert their interests in public school choice in order to promote educational reform and improvement within Blytheville School District and thereby economic and community development in and around Blytheville, Arkansas."  (Dkt. No. 2, at 2, ¶ 2).

[3]   Tracy Coppedge is described in the complaint as "spouse of plaintiff Oliver Coppedge" and "a citizen of Arkansas, resident of Blytheville, Arkansas, and Blytheville School District, and parent of children who reside with their father in Armorel School District, and desires to exercise her rights of public school choice on behalf of herself and her children so they may be educated at Armorel School District even if they resided with her in Blytheville, to improve educational outcomes for her children and to drive education reform and improvement in Blytheville School District."  (Dkt. No. 2, at 3, ¶ 6).

contend this Court has federal subject matter jurisdiction over this 42 U.S.C. § 1983 cause of action that arises under federal-question jurisdiction as provided in 28 U.S.C. § 1331.

Generally, the 2013 Act requires each school district in Arkansas to participate in the public school choice program.  Plaintiffs contend the 2013 Act contains two limitations as set forth in Arkansas Code Annotated § 6-18-1906(a) and (b) that may apply to a resident district and may restrict or defeat a student's right to transfer to a non-resident district.  Plaintiffs contend that only the second limitation is at issue here.

The first limitation, as set forth in Arkansas Code Annotated § 6-18-1906(a), provides: "If the provisions of [the 2013 Act] conflict with a provision of an enforceable desegregation court order or a district's court-approved desegregation plan regarding the effects of past racial segregation in student assignment, the provisions of the order or plan shall govern." ("Limitation a").

Plaintiffs characterize the second limitation as an "opt-out" provision set forth in Arkansas Code Annotated § 6-18-1906(b) ("Limitation b").  Limitation b states as follows:

> (b)   (1)   A school district annually may declare an exemption under this section if the school district is subject to the desegregation order or mandate of a federal court or agency remedying the effects of past racial segregation.
>
> (2)   (A)   An exemption declared by a board of directors under this subsection is irrevocable for one (1) year from the date the school district notifies the Department of Education of the declaration of exemption.
> (B)   After each year of exemption, the board of directors may elect to participate in public school choice under this section if the school district's participation does not conflict with the school district's federal court-ordered desegregation program.
>
> (3)   A school district shall notify the department by April 1 if in the next school year the school district intends to:
> (A)   Declare an exemption under this section; or
> (B)   Resume participation after a period of exemption.
> . . .

Ark. Code Ann. § 6-18-1906(b).

Plaintiffs challenge the Blytheville District's ability to opt-out of Act 2013 at all for the 2013-2014 school year.  Plaintiffs claim Limitation (b) requires a school district to notify the Department of Education by April 1 if it intends to declare an exemption under Limitation (b) in the next school year.  Plaintiffs allege that, because the 2013 Act was adopted and became effective on April 16, 2013, the law does not allow any school district in Arkansas to declare an exemption under Limitation (b) for the 2013-2014 school year.  Plaintiffs allege that the Blytheville District has resolved not to participate in the school choice program created by the 2013 Act in the 2013-2014 school year.  The Blytheville District provided notice to the Arkansas Department of Education after April 1, 2013, of its exemption under Limitation (b) for the 2013-2014 school year, even though that exemption is unavailable for the coming school year according to plaintiffs.  Plaintiffs also believe that the Blytheville District has communicated its effort to declare the exemption from the 2013 Act for the 2013-2014 school year to surrounding school districts to which plaintiffs' children seek to transfer.

Plaintiffs also challenge the basis on which the Blytheville District claimed a Limitation (b) exemption from the 2013 Act.  According to plaintiffs, the Blytheville District asserted its Limitation (b) exemption "based on three cases and an agency mandate, to none of which [the Blytheville District] is subject and none of which provides a [L]imitation (b) exemption under the [2013] Act to any school district" (Dkt. No. 1, at 9).  Plaintiffs claim the Blytheville District has acted in bad faith opposing the 2013 Act and thereby depriving plaintiffs and their children of their rights as citizens under the 2013 Act.  Plaintiffs allege that the Blytheville District's "past racial discrimination in maintaining a segregated dual school system was remedied two generations ago" and, therefore, the Blytheville District "cannot use its past racial segregation as a reason to deny plaintiffs and their children the benefits of the education-reform measures established" by this 2013 Act (Dkt. No. 2, at 11).

4

Plaintiffs assert that, as a result of the actions of the Blytheville District, "neighboring school districts are uncertain whether they may accept transfers of students, including plaintiffs' children, from Blytheville School District in the coming school year under the Act, and they have not accepted plaintiffs' children" (Dkt. No. 2, at 11).  To transfer from a resident to a non-resident school district, a student's parent must submit an application to the non-resident district with a copy to the resident district no later than June 1 of the year in which the student seeks to begin the fall semester at the non-resident district.  Plaintiffs, other than the Stevensons, have submitted an application on behalf of a student for a transfer from the Blytheville District to a non-resident district for the school year beginning in the fall of 2013.

Plaintiffs allege that they will be deprived of their right to school choice under the 2013 Act unless appropriate injunctive relief is granted by this Court.  Plaintiffs allege that their children will suffer irreparable harm if they are not permitted to exercise their rights to public school choice and attend a non-resident district this upcoming school year.

### B.       The Resolution and Claimed Exemption

On April 29, 2013, the Board of Education of the Blytheville District met in special session and adopted a resolution by a vote of six to zero to declare the Blytheville District exempt from the 2013 Act (the "Resolution") (Dkt. No. 2, at 41-42).   Richard Atwill, Superintendent of the Blytheville District, informed the Arkansas Department of Education of the Resolution and exemption by letter dated May 9, 2013 (Dkt. No. 4-4).  According to the Arkansas Department of Education's website, 22 Arkansas school districts filed exemptions from the 2013 Act, including the Blytheville District.   Arkansas Department of Education, http://www.arkansased.org/divisions/public-school-accountability/equity-assistance/school-choice (last visited July 1, 2013).

C.      Transfers Under the Act

Based on briefing requested by the Court from the parties, the parties agree that the Blytheville District's attempt to exempt itself from the 2013 Act "does not allow students in the District to apply to transfer to a nonresident district for the 2013-2014 school year" (Dkt. No. 18, at 6).

To address arguments raised by the Blytheville District, the Court addresses briefly the ability to transfer under the 2013 Act.  Under the 2013 Act, the parents of students seeking to transfer to attend a school in a non-resident district must submit an application to the non-resident district with a copy to the resident district on a form approved by the Arkansas Department of Education and postmarked no later than June 1 of the year in which the student seeks to begin the fall semester at the non-resident district.  Ark. Code Ann. § 6-18-1905(a).  By August 1 of the school year in which the student seeks to enroll in a non-resident district, the superintendent of the non-resident district shall notify the parent and the resident district in writing as to whether the student's application has been accepted or rejected.  Ark. Code Ann. § 6-18-1905(b)(1).  If the application is accepted, the notification letter must include the deadline by which the student shall enroll in the non-resident district, after which the acceptance is null, and instructions for the renewal procedure established by the non-resident district.  Ark. Code Ann. § 6-18-1905(b)(3).  If the application is rejected, the notification letter shall state the reason for the rejection.  Ark. Code Ann. § 6-18-1905(b)(2).

For students whose applications for transfer are rejected by the non-resident district, those students may request a hearing before the Arkansas State Board of Education to reconsider the transfer.  Ark. Code Ann. § 6-18-1907(b)(1).  The 2013 Act requires that a student request in writing an appeal hearing within ten (10) days after the student or student's parent receives the notification letter.  Ark. Code Ann. § 6-18-1907(b)(2)(A).  "As a part of the review process, the

parent may submit supporting documentation that the transfer would be in the best educational, social, or psychological interest of the student."  Ark. Code Ann. § 6-18-1907(b)(2)(B).  The Arkansas State Board of Education may overturn the non-resident district's decision on appeal. Ark. Code Ann. § 6-18-1907(b)(3).  If so, the Arkansas State Board of Education "shall notify the parent, the non[-]resident district, and the resident district of the basis for the state board's decision."  *Id.*

### D.    The May 1, 2013, Memo

The 2013 Act provides that the "State Board of Education may promulgate rules to implement" the 2013 Act.  Ark. Code Ann. § 6-18-1907.  On May 1, 2013 the Arkansas Department of Education issued an informational memorandum (the "May 1, 2013, Memo") which addresses the 2013 Act and the April dates in the 2013 Act.  The May 1, 2013, Memo states in pertinent part:  "The A[rkansas] D[epartment of] E[ducation ("ADE")] will not attempt to reestablish a deadline that is set in law.  However, so school districts and the ADE can properly administer all aspects of Act 1227 in an orderly fashion and so that parents, students, patrons and school district leaders may be aware of those school districts which are subject to desegregation orders or federal agency mandates remedying the effects of past racial segregation, the ADE requests that school districts notify the ADE of any exemption by Friday, May 17, 2013." (Hearing Ex. 4, at 2; Dkt. No. 19-2, at 3).  The May 1, 2013, Memo goes on to state: "Please note that Act 1227 [the 2013 Act] does not provide the ADE the authority to rule a particular exemption valid or invalid."

The Court acknowledges plaintiffs submitted a declaration from Tom W. Kimbrell, Ed.D., Commissioner of Education, which plaintiffs assert makes clear the May 1, 2013, Memo is "simply informative in nature and does not carry with it the force of law or regulation" (Dkt.

No. 19-2, at 1).  The Court also acknowledges that the ADE issued Emergency Rules Governing the Public School Choice Act of 2013 (Dkt. No. 19-2, at 27-34).

## II.      The Motion to Dismiss

The Blytheville District contends this case should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because, even though plaintiffs assert federal question jurisdiction, plaintiffs are seeking an interpretation by this Court of a recently passed Act of the Arkansas General Assembly.

The Blytheville District also contends this case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because: (1) the Stevenson plaintiffs lack standing to bring this action as grandparents, (2) the remaining plaintiffs lack standing to bring this claim because they have failed to allege that they have been harmed or are likely to be harmed because there is no allegation that their applications for transfer to another school district have been rejected or that they have exhausted their administrative remedies, and (3) the remaining plaintiffs fail to state a claim upon which relief can be granted because they do not allege that the nonresident school district to which all plaintiffs seek to transfer, have rejected their application nor do the remaining plaintiffs allege that they have exhausted their administrative remedies by seeking reconsideration or appeal to the Arkansas State Board of Education as allowed by Arkansas law.

The Blytheville District also maintains that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party in that the plaintiffs have failed to name and join as a party the non-resident school districts to which plaintiffs' children seek to transfer.[4]

_____

[4]   The Blytheville District cites Armorel as the non-resident school district to which plaintiffs seek to transfer.  Heath and Heather Adkisson's child seeks to transfer to Gosnell (Dkt.

The Court will examine each of these arguments raised by the Blytheville District.

## III.   Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiffs contend that the Blytheville District, a public school district acting under Arkansas law, resolved to opt-out of the 2013 Act in a manner that is not authorized by the Act and violates plaintiffs' Fourteenth Amendment rights.   Plaintiffs have identified specifically their Fourteenth Amendment rights to Due Process and Equal Protection.  For these reasons, plaintiffs contend this Court has federal subject matter jurisdiction over this 42 U.S.C. § 1983 cause of action that arises under federal-question jurisdiction as provided in 28 U.S.C. § 1331.

### A.   Jurisdiction Over the § 1983 Claim

The Court is mindful that, when it examines the 2013 Act, much history predates the current version of the 2013 Act.  *See generally Teague et al v. Arkansas Board of Education*, 873 F.Supp.2d 1055 (W.D. Ark. 2012) (discussing the history of school choice legislation in Arkansas and finding unconstitutional a prior version of Arkansas's effort to enact school choice legislation).  The Blytheville District contends that plaintiffs' complaint "is a state law claim related to the interpretation of that law" and that, although plaintiffs have attempted to raise a federal claim, "such claim is not substantial in relation to the universal application of the Act; more importantly, such interpretation, at this time, given the infancy of the Act, cannot be resolved in a federal forum without disturbing the explicit balance of federal and state judicial responsibilities."  (Dkt. No. 8, at 6).

---

4-2, at 8).  The Court construes the Blytheville District's arguments as applying to both Armorel and Gosnell.

Given plaintiffs' allegations, the Court finds unpersuasive the Blytheville District's arguments and authorities cited on subject matter jurisdiction.  Plaintiffs do not allege a predominantly state-law claim that implicates federal issues.  They allege a violation of their constitutional rights.  This Court concludes it has subject matter jurisdiction.

Plaintiffs' complaint purports to state a claim under 42 U.S.C. § 1983.  The Blytheville District focuses on plaintiffs' allegation that the Blytheville District purportedly violated the 2013 Act.  Violations of state law, state-agency regulations, and state-court orders do not, by themselves, state a claim under 42 U.S.C. § 1983.  *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995).  "Section 1983 guards and vindicates federal rights alone."  *Id*.  Plaintiffs claim that the Blytheville District, by adopting the Resolution and exempting itself from the 2013 Act, has violated plaintiffs' rights to Due Process and Equal Protection under the Fourteenth Amendment.

### B.      *Pullman* Abstention

The Blytheville District argues that the interpretation of the 2013 Act plaintiffs seek should properly be decided by an Arkansas state court (Dkt. No. 8, at 5).  The Blytheville District argues that plaintiffs have attempted to raise a federal claim but that "[t]he issues presented by this case are solely or predominantly state issues which are not even ripe for adjudication in a court of law."  (Dkt. No. 8, at 4).  The Blytheville District also claims the interpretation of the 2013 Act cannot be resolved in federal court without disturbing the explicit balance of federal and state judicial responsibilities (Dkt. No. 18, at 6).  Based on the arguments raised by the Blytheville District, the Court requested that, in prehearing briefing, the parties address whether the Court should abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

Under the *Pullman* abstention doctrine, a federal court may abstain when the contested state law is ambiguous and susceptible to a state court interpretation that may avoid or modify the federal constitutional issue.  The Supreme Court said that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question."  *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975).  This doctrine is applicable only when the issue of state law is unsettled and is "sufficiently likely" to be subject to an interpretation that will avoid or modify the federal constitutional question.  *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972).

When a federal court invokes *Pullman* abstention, the § 1983 claimant must seek a state court interpretation of the state law from the highest court in the state.  In some situations, this may be accomplished expeditiously pursuant to a state certification procedure.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).

Under *Pullman* abstention, a district court generally retains jurisdiction over the case but stays its proceedings while the state court adjudicates the issue of state law.  Thus, *Pullman* abstention does not "involve the abdication of jurisdiction, but only the postponement of its exercise."  *Harrison v. NAACP*, 360 U.S. 167, 177 (1959).

The Eighth Circuit has determined that *Pullman* abstention requires consideration of:  (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations.  *Beavers v. Arkansas State Bd. of Dental*

*Examiners*, 151 F.3d 838, 841 (8th Cir. 1998); *George v. Parratt*, 602 F.2d 818, 820-22 (8th Cir. 1979).

The Blytheville District advocates for *Pullman* abstention, while plaintiffs argue against it. "[F]ederal courts have refused to abstain in suits for injunctive relief against state laws or action which impinge upon the exercise of constitutional rights." *George*, 602 F.2d at 820 (citation omitted). Plaintiffs contend that, if this Court abstains on their request for injunctive relief, plaintiffs certainly will suffer irreparable harm. The Arkansas Supreme Court is set to adjourn the first week of July and reconvene the first week of September. Plaintiffs argue that abstention to the Arkansas Supreme Court would require significant time for preparation and put plaintiffs at a severe disadvantage for admittance to a non-resident district for the 2013-2014 school year. The Court determines that it will not abstain under *Pullman* on plaintiffs' request for injunctive relief.

C.     *Younger* Abstention

In prehearing briefing, the Blytheville District raised and addressed whether abstention as formulated in *Younger v. Harris*, 401 U.S. 37 (1971), should apply. In the "interests of comity and federalism" the *Younger* abstention generally prohibits federal courts from granting relief that interferes with pending state criminal prosecutions or with pending state civil proceedings that implicate important state interests. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38 (1984). The concept of federalism represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44. The *Younger* abstention "espouse[s] a strong

federal policy against federal-court interference with pending state judicial proceedings." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 431 (1982).

The Supreme Court has expanded *Younger* abstention beyond criminal proceedings, and even beyond proceedings in courts, but never to proceedings that are not "judicial in nature." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 370 (1989). The Supreme Court also has found *Younger* applicable to pending state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986); *Middlesex County Ethics Comm.*, 457 U.S. at 437; *Gibson v. Berryhill*, 411 U.S. 564 (1973).

In *Middlesex*, the Supreme Court explained there are three inquires that are relevant to *Younger* abstention:  (1) is there an ongoing state judicial proceeding; (2) does the state proceeding implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges.  457 U.S. at 432.  If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Id.* at 435.

Generally, "where the plaintiff in a federal action is not a party to the state proceeding, *Younger* concerns about federal adjudication do not arise." *Donohue v. Mangano*, 886 F.Supp.2d 126, 143 (E.D.N.Y. 2012) (internal citations omitted).  "As a general proposition, abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding; the doctrine does not bar non-parties from raising constitutional claims in federal court, even if the same claims are being addressed in a concurrent state proceeding involving similarly situated parties." *Id.*  Here, plaintiffs are not parties to a concurrent state or administrative proceeding.

Despite this, "in certain circumstances, *Younger* may apply to the claims of third-parties who are not directly involved in any pending state proceedings. *Id.* (citing *Spargo v. New York*

*State Com'n on Judicial Conduct*, 351 F.3d 65, 82 (2d. Cir. 2003)).  Parties that are too closely related should be treated as one for the purposes of applying *Younger* abstention.  *Id.*  In *Spargo*, the Second Circuit held that it had to assess whether "the plaintiffs' interests are so inextricably intertwined that direct interference with the state court proceeding is inevitable, [such that] *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state court proceeding."  *Spargo*, 351 F.3d at 82.

Even if the parties are so closely related that they should be treated as one for purposes of applying *Younger*, if the court finds that the parallel state court proceeding is remedial, not coercive, it is possible that *Younger* abstention would simply not apply.  *Donohue*, 886 F.Supp.2d at 144.  The dichotomy between state remedial actions and coercive actions mainly stems from these statements in a footnote in the Supreme Court case of *Ohio Civil Rights Commission* which stated:

> The lower courts have been virtually uniform in holding that the *Younger* principle applies to pending state administrative proceedings in which an important state interest is involved....
>
> The application of the *Younger* principle to pending state administrative proceedings is fully consistent with *Patsy* [*v. Board of Regents of the State of Florida*, 457 U.S. 496, 102 (1982)], which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Unlike *Patsy*, the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.

477 U.S. at 627 n.2.  Based on this language, "some courts [in determining whether to abstain,] evaluate whether the federal plaintiff is involved in a 'coercive' state proceeding, in other words a state-initiated enforcement action in which the plaintiff does not have a choice to participate, or a 'remedial' proceeding in which the plaintiff initiated an option to seek a remedy for the state's wrongful action." *Donohue*, 866 F.Supp.2d at 145 (*quoting* Eric Turner, Comment, *You Say*

*Remedial, I Say Coercive, Let's Call the Whole Thing Off: Why the Remedial/Coercive Distinction Is Not Critical in Younger Abstention*, 49 Washburn L.J. 629, 641 (2010)).

The Blytheville District contends that, pending at the Arkansas State Board of Education, there is currently an appeal filed by parents who are similarly situated to plaintiffs in this case. *See Palestine-Wheatley School Choice Rejection Letters* (Dkt. No. 18-1, Ex. A). That pending administrative appeal was brought after the nonresident district denied student transfer applications under the 2013 Act. Those parents submitted applications for their children to attend the Palestine-Wheatley School District for the 2013-2014 school year. The parents' counsel represents in an appeal filed with the Arkansas State Board of Education that those applications were denied based upon "the sole premise that the Forrest City School District is exempt from the School Choice Act due to it being under a desegregation order" (Dkt. No. 18-1, at 1). In their pending appeal, the parents assert that "[t]he exemption claimed by the Forrest City School District was untimely and is void as a matter of law" and that the "Forrest City School District does not meet the requirements of the School Choice Act in that it is not under an order of desegregation or mandate of a federal court or agency remedying the effects of past racial segregation" (Dkt. No. 18-1, at 1-2).

Plaintiffs contend that there are "clear distinctions between those parents and the plaintiffs herein" (Dkt. No. 21, at 4). Specifically, plaintiffs claim they have not had their applications for transfer denied by a non-resident district and contend the 2013 Act, and the Rules promulgated by the State Board of Education, state the exemption itself terminates the application and appeal process. Further, it is unclear whether the Arkansas State Board of Education will reach these issues when deciding the appeal. The May 1, 2013, Memo states in pertinent part: "Please note that Act 1227 [the 2013 Act] does not provide the ADE the authority to rule a particular exemption valid or invalid" (Hearing Ex. 4, at 2; Dkt. No. 19-2, at 3). The

Court acknowledges Dr. Kimbrell's declaration, which calls into question the force of this statement (Dkt. No. 19-2, at 1).

The Court finds that, because the Blytheville District's exemption declaration pursuant to the Act does not allow students in the Blytheville district to apply to transfer to a nonresident district for the 2013-2014 school year, there is no parallel state proceeding.  In the alternative, the Court also finds it is unlikely that plaintiffs are so inextricably intertwined that they should be treated as the same party as the parents with the currently pending appeal before the State Board of Education for purposes of *Younger* abstention.  Even if the Court determined plaintiffs were so inextricably intertwined that they should be treated as one with the parents with the currently pending appeal, the Court determines that the pending appeal at the State Board of Education is remedial, not coercive.  For these reasons, the Court determines that it will not abstain under *Younger* on plaintiffs' request for injunctive relief.

## IV.   Standing Arguments

The Blytheville District also contends this case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because: (1) the Stevenson plaintiffs lack standing to bring this action as grandparents, (2) the remaining plaintiffs lack standing to bring this claim because they have failed to allege that they have been harmed or are likely to be harmed because there is no allegation that their applications for transfer to another school district have been rejected or that they have exhausted their administrative remedies, and (3) the remaining plaintiffs fail to state a claim upon which relief can be granted because they do not allege that the nonresident school districts to which plaintiffs seek to transfer have rejected their applications nor do the remaining plaintiffs allege that they have exhausted their administrative remedies by seeking reconsideration or appeal to the Arkansas State Board of Education as allowed by state law.

16

A.      **Stevenson Plaintiffs' Standing**

The Court in its oral ruling from the bench opted not to address the Stevenson plaintiffs' standing arguments, based on the Court's decision that the non-Stevenson plaintiffs have standing.  The Court is prepared to rule now on whether the Stevenson plaintiffs have standing. At the hearing, plaintiffs argued that the Stevenson plaintiffs have standing not only because of their tax payer status but also because of their civic interest in the community.  In other words, with no citation to authority, plaintiffs advocated for a "taxpayer plus" standing.  The Stevenson plaintiffs did not testify at the hearing.  The Stevenson plaintiffs are the grandparents of children attending school in the Blytheville District.  They argue that they have suffered concrete and particularized damages because of the Blytheville District's actions (Dkt. No. 11, at 5).  They allege that they pay taxes to support the Blytheville District, are actively engaged in activities of economic and community development, and believe that public school choice in the Blytheville District promotes education reform and improvement, thereby driving economic and community development (Dkt. No. 11, at 5).

As plaintiffs cite no authority for "taxpayer plus" standing, this Court rejects it.  The Court examines whether the Stevenson plaintiffs have taxpayer standing and determines that, on the record before the Court, they do not.  For these reasons, the Blytheville District's motion to dismiss the Stevenson plaintiffs' claims is granted.

Ordinarily to prove an injury in fact under Article III of the Constitution, the plaintiff need only allege an injury that is "fairly traceable" to the wrongful conduct; the injury need not be financial.  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.2 (2d Cir. 1988).  By its nature, "taxpayer standing" is different and requires an injury resulting from a government's expenditure of tax revenues.  *See, e.g., Doremus v. Board of Education of Borough of*

*Hawthorne*, 342 U.S. 429 (1952).  Plaintiffs claim the Stevenson plaintiffs have standing to sue as taxpayers and citizens of the Blytheville District (Dkt. No. 11, at 4).

In *Friedmann v. Sheldon Community School District*, 995 F.2d 802 (8th Cir. 1993), the Eighth Circuit examined whether taxpayers who sought a preliminary injunction to enjoin certain school districts from permitting graduating students to read an invocation or benediction at graduation ceremonies had standing to maintain the action.  The taxpayer-plaintiffs were "neither graduating students, parents of students nor residents of the defendant school districts."  995 F.2d at 803.  They also did not allege an intention to attend the graduation ceremonies in question.  *Id*. Instead, they based their standing to bring the action as taxpayers in the State of Iowa.  *Id.*  The Eighth Circuit determined:   "The Supreme Court has required plaintiffs asserting taxpayer standing to jump two hurdles:  first, the taxpayer must establish 'a logical link between [his status as taxpayer] and the type of legislative enactment attacked,' and second, 'the taxpayer must establish a nexus between the status and the precise nature of the constitutional infringement alleged.'"  *Id.* (quoting *Flast v. Cohen*, 392 U.S. 83, 102 (1968)).

In *Friedmann*, the district court below determined the taxpayer-plaintiffs had standing because they had shown a "measurable expenditure of tax money" through the challenged activity, relying on the Eight Circuit's decision in *Minnesota v. Federation of Teachers v. Randall*, 891 F.2d 1354 (8th Cir. 1989).  The Eight Circuit determined the district court misconstrued *Randall* and the Supreme Court decisions upon which *Randall* relied.  995 F.2d at 803.  The Eighth Circuit concluded that, in *Randall*, the taxpayer plaintiff challenged a state statute allowing high school students to take classes at private, religious colleges at state expense.  Thus, the challenged statute provided direct expenditures of tax money to religiously affiliated institutions.  In the *Friedmann* case, the Eighth Circuit determined there was no such nexus because plaintiffs made no allegation that the state was spending money for religious

18

purposes.  Instead, the Eighth Circuit concluded plaintiffs had shown "no more than that state money is spent for diplomas, which certainly is not objectionable under the Establishment Clause." *Id.* at 803.  For these reasons, the Eighth Circuit determined the taxpayer-plaintiffs could not show a nexus between their status as taxpayers and the "precise nature of the constitutional violation alleged." *Id.*

The Court finds that the Stevenson plaintiffs lack taxpayer standing.  The Stevensons have failed to show a nexus between their status as taxpayers and the "precise nature of the constitutional violation alleged" based on the information provided in the complaint (Dkt. No. 2), in their response to the motion to dismiss (Dkt. No. 11), and in the argument made by counsel at the hearing.  The payment of taxes is generally not sufficient to establish standing to challenge an action by the state or county government. *Freedom From Religion Foundation, Inc. v. Olson*, 566 F.Supp.2d 980, 994 (D.N.D. 2008).  The Blytheville District's motion to dismiss the Stevenson plaintiffs' claims is granted.

### B.      Remaining Plaintiffs' Standing

Article III standing requires a plaintiff to show, at a minimum:  (1) he or she has suffered an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and government conduct; and (3) it is likely that the requested relief will redress that injury. *Pucket v. Hot Springs School Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008).  On a motion to dismiss, the court must presume "that general allegations embrace those specific facts necessary to support a contested claim." *Constitution Party v. Nelson*, 639 F.3d 417, 420-21 (8th Cir. 2011).  Deciding whether the injury is concrete, or too speculative to afford standing, is not a "mechanical exercise;" instead the court must carefully analyze whether the claimed injury is too abstract. *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Court finds that the plaintiffs have standing.  Plaintiffs claim that, as a result of the Blytheville District's adopting the Resolution and claiming exemption from the 2013 Act, plaintiffs are not permitted to have their applications for transfer considered by non-resident districts.  The Blytheville District in its response to order entered June 17, 2013, states that "the District's exemption declaration has the effect of prohibiting students from transferring to a non-resident district for the 2013-2014 school year pursuant to the Act" (Dkt. No. 18, at 7).[5]  The Court finds this is sufficient to allege an injury in fact for purposes of establishing standing.  Further, there is a causal connection between that alleged injury and purported government conduct.  Here, the Blytheville District is a government entity that has allegedly injured plaintiffs.  If the Court were to grant plaintiffs' requested relief of a preliminary injunction, that injury could be redressed.  Plaintiffs would be permitted to have their applications for transfer considered by non-resident districts.

## C.      Application Process and Exhaustion

The Blytheville District argues that plaintiffs' complaint should be dismissed because it is not ripe for suit and because plaintiffs have not exhausted their administrative remedies under the 2013 Act.  As to the first point, from the complaint, briefs, and arguments made, the Court acknowledges it is difficult to discern what precisely plaintiffs seek as relief.  Based on the prayer for relief in plaintiffs' complaint, the Court concludes that plaintiffs seek the right to participate in public school choice under the 2013 Act and to have their applications for transfer considered by non-resident districts (Dkt. No. 2, at 11).  The Court rejects the notion that

---

[5]  The Court acknowledges that, at the hearing, counsel for the Blytheville District argued that other districts, including the non-resident districts to which plaintiffs seek to transfer, could take a different position and contend that the 2013 Act does not bar them from admitting students from the Blytheville District because the non-resident districts might interpret the 2013 Act differently or reject the Blytheville District's claimed exemption.  For purposes of resolving the issue of standing, the Court will rely upon the position advanced by plaintiffs and the Blytheville District regarding the effect of the claimed exemption.

plaintiffs seek an order from the Court directing non-resident districts to accept plaintiffs' children for transfer, which is what the Blytheville District seems to suggest.  Plaintiffs contend that they only seek to bring the Blytheville District to account for its conduct.  Because both parties agree that the Blytheville District's exemption has the effect of prohibiting students from transferring to a non-resident district for the 2013-2014 school year pursuant to the 2013 Act, the Court determines this matter is ripe.

The Court also determines that plaintiffs need not exhaust administrative remedies under the 2013 Act.  "Exhaustion is presumed to be non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision."  *Ace Property & Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 440 F.3d 992, 997 (8th Cir. 2006) (internal citation omitted).  Where the statutory or regulatory framework in question does not require exhaustion of administrative remedies before obtaining judicial review, whether to require exhaustion is within the discretion of the district court.  *State of Missouri v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987).  This Court determines that, for purposes of plaintiffs' request for preliminary injunctive relief, exhaustion is not required.

The Blytheville District contends plaintiffs could and should have followed the course taken by what it terms "similarly situated parents" in the Forrest City, Arkansas, School District. Those parents submitted applications for their children to attend the Palestine-Wheatley School District for the 2013-2014 school year.  The parents' counsel represents in an appeal filed with the Arkansas State Board of Education that those applications were denied based upon "the sole premise that the Forrest City School District is exempt from the School Choice Act due to it being under a desegregation order" (Dkt. No. 18-1, at 1).  In their pending appeal, the parents assert that "[t]he exemption claimed by the Forrest City School District was untimely and is void as a matter of law" and that the "Forrest City School District does not meet the requirements of

the School Choice Act in that it is not under an order of desegregation or mandate of a federal court or agency remedying the effects of past racial segregation" (Dkt. No. 18-1, at 1-2).

It is unclear whether the Arkansas State Board of Education will reach these issues when deciding the pending appeal.  The May 1, 2013, Memo states in pertinent part:  "Please note that Act 1227 [the 2013 Act] does not provide the ADE the authority to rule a particular exemption valid or invalid" (Hearing Ex. 4, at 2; Dkt. No. 19-2, at 3).   The Court acknowledges Dr. Kimbrell's declaration, which calls into question the force of this statement (Dkt. No. 19-2, at 1).

Regardless of whether the Arkansas State Board of Education reaches these issues, the Blytheville District contends that, under Arkansas law, a state judicial review is available once a final administrative order is entered.  *See* Ark. Code Ann. §§ 25-15-201, *et seq*.  The Blytheville District maintains that the constitutional challenges to the 2013 Act may be raised in a state proceeding because Arkansas courts have authority to determine issues of the constitutionality of Arkansas statutes.  *See* Ark. Code Ann. § 25-15-212(h)(1) (permitting state court review of an administrative decision if it was "[i]n violation of constitutional or statutory provisions").

Plaintiffs do not concede that they should be required to take an appeal to the Arkansas Board of Education.  They contend that their rights have been violated as a result of the Blytheville District adopting the Resolution and claiming exemption from the 2013 Act, without regard to acts taken by the non-resident districts to which they seek to transfer.  Further, plaintiffs maintain that neither the 2013 Act nor the Arkansas Department of Education Emergency Rules Governing the Public School Choice Act of 2013 set forth a procedure for challenging the Blytheville District's acts (Hearing Exs. 2, 6).   Plaintiffs also assert that requiring them to exhaust administrative remedies will result in irreparable harm, given that the time that process will take likely will exceed the dates by which plaintiffs should be considered

22

for and informed of decisions regarding transfer to non-resident districts for the 2013-2014 school year.

In *Hardy v. Malvern School District*, plaintiffs challenged a prior version of the 2013 Act, which is no longer in effect. In unpublished opinions, the district court examined the nature of the Arkansas State Board of Education's authority and role in regard to the prior version of the 2013 Act. *See* Civ. No. 08-6094, 2010 WL 956696, *7-8 (W.D. Ark. Mar. 16, 2010). In that case, the Court determined "exhaustion of administrative remedies was not required." *Id*. at *8, n.10. As the Court observed, the Arkansas State Board of Education "largely exists to develop educational policy, and its role in the overall transfer process is extremely limited. It can resolve disputes under the School Choice Act and hear appeals. Plaintiffs have not appealed to the board; the board cannot proactively force Plaintiffs to appeal or enforce the statute against them." *Id*. at *8. It is unclear whether, under the 2013 Act, the Arkansas State Board of Education has or will assume a different role.

It is clear that "[a] party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual." *Ace Property & Cas. Ins. Co.*, 440 F.3d at 1000 (internal citation omitted). For all of these reasons, the Court concludes plaintiffs should be excused from exhausting administrative remedies prior to seeking preliminary injunctive relief, even if such remedies exist and apply here.

## V.    Necessary Party Analysis

The Blytheville District also maintains that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party in that plaintiffs have failed to name and join as a party the non-resident school districts to which plaintiffs' children seek to

transfer.  Federal Rule of Civil Procedure 12(b)(7) raises the defense of failure to join a party under Rule 19.  Rule 19 of the Federal Rules of Civil Procedure states:  "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

The Blytheville District argues that, in the absence of the non-resident school districts, the Court cannot grant complete relief to the existing parties.  The Blytheville District also argues that the failure to include the non-resident districts as a party may result in multiple law suits which are contrary to the interest of judicial economy.  Furthermore, the Blytheville District contends that judgment rendered in the absence of the non-resident districts would prejudice the absent party or parties who may or may not have other reasons for rejecting the transfer (Dkt. No. 8).

The Court declines to grant the Blytheville District's motion to dismiss pursuant to Rule 12(b)(7).  The Court believes it can provide complete relief among existing parties.  If the Court were to grant the preliminary injunction plaintiffs seek, plaintiffs would be permitted to apply for transfer under the 2013 Act and to have their applications for transfer considered by the non-resident districts.  At that point, the non-resident districts would be able to determine whether to accept or reject plaintiffs' applications and to take other actions in their own interest.  For these reasons, the Blytheville District's motion to dismiss pursuant to Rule 12(b)(7) is denied.

* * *

24

For the foregoing reasons, plaintiffs' motion to dismiss is granted in part and denied in part (Dkt. No. 4).

SO ORDERED this the 1st day of July, 2013.

_____
Kristine G. Baker
United States District Judge